OLIVER W. BARNES, Respondent and Appellant, *v.* GEORGE W. BROWN, Appellant, et al., Respondents.

Upon the death of one of two joint contractors, the primary liability for a breach of the contract rests upon the survivor, and in order to maintain an action against him and the personal representatives of the decedent jointly, the complaint must allege that the latter is insolvent or unable to pay.

In case of the omission of such an averment the defect may be availed of by objection on the trial.

A plaintiff is not entitled to an amendment of his complaint in this respect on trial before a referee, as a matter of right, and the exercise of his discretion by the referee, in denying the amendment, is not reviewable here.

Plaintiff entered into a contract with B. & S. by which the latter, for a valuable consideration, agreed, among other things, to assign to plaintiff 2,000 shares of the capital stock of a certain corporation, said stock "to be full paid stock." B. & S. transferred to plaintiff certificates for the specified number of shares, but it was not full paid stock. On discovery of this plaintiff tendered back the certificates and demanded full paid stock, which was refused. In an action to recover damages for breach of the contract, it appeared and the referee found that the stock had no actual or market value at the time when B. & S. undertook to deliver. *Held,* that plaintiff was only entitled to recover nominal damages; that it was immaterial that defendants, in order to perform the contract, would have been compelled to pay par for the stock, as plaintiff was simply entitled to recover a sum which would indemnify him for the loss he had suffered by the default.

*Scattergood* v. *Wood* (14 Hun, 269; 79 N. Y. 263), distinguished.

*Barnes* v. *Brown* (55 Hun, 339), reversed as to defendant Brown.

(Argued November 30, 1891; decided January 20, 1892.)

APPEAL by the defendant Brown from order of the General Term of the Supreme Court in the first judicial department, made February 3, 1890, which reversed a judgment in his favor entered upon the report of a referee and granted a new trial. Also appeal by the plaintiff from judgment of the same General Term, entered upon the same order, which modified and affirmed as modified a judgment in favor of the defendants Seligman entered upon the report of a referee.

This action was brought to recover damages for the alleged breach of a contract, of which the following is a copy, to wit:

" Oliver W. Barnes having by instruments bearing even date herewith, assigned and transferred to us, George H. Brown and Joseph Seligman, all claims and demands against the New York City Central Underground Railway Company, and his title to certain subscriptions to the capital stock of said company, and also any interest he may have in a certain alleged contract made with the said company by Francis P. Byrne, and having also transferred sixty shares of stock in said company. Now, we, George H. Brown and Joseph Seligman, do hereby, in consideration of the premises and of one dollar to us paid by the said Oliver W. Barnes, agree that we will, upon certain amendments to the charter of the said New York City Central Underground Railway Company, now pending before the legislature of the state of New York, becoming a law, pay or cause to be paid to the said Oliver W. Barnes, his representatives and assigns, the sum of twenty-seven thousand five hundred dollars in currency of the United States, being the amount of certain advances made and services rendered by the said Barnes to the said railway company. And also that we will cause to be delivered to the said Barnes, or his assigns, at the time of the payment of the said money, two thousand shares of the capital stock of the said railway company, which said stock is to be full paid stock.

" And we further agree with the said Oliver W. Barnes, his representatives and assigns, that in the event of the said amendments not becoming a law at the present session of the legislature, we will either cause said money to be paid and said two thousand shares of stock delivered to the said Barnes, or his assigns, or have reassigned to the said Barnes, or his assigns, the claims, demands and rights so assigned to us, and transfer to him or his assigns the said sixty shares of stock so transferred to us the next day after the close of the present session of the legislature of New York. And we further agree that not more than one hundred additional shares of the stock of said company shall be issued until the said payment be made and stock delivered without the consent of the said Barnes, and that so much of said one hundred shares as shall be issued

shall be transferred to the said Barnes, if we do not exercise our option of paying said twenty-seven thousand five hundred dollars, and delivering said two thousand shares on the failure of the said amendments to become a law at the present session. And we further agree that no contract for the construction of the railway of the company shall be entered into without the consent of the said Barnes, until the said money shall be paid and the stock delivered.

"In witness whereof, we have hereunto set our hands and seals, this twenty-sixth day of March, in the year one thousand eight hundred and seventy-two.

"GEORGE H. BROWN. [L. S.]

"JOSEPH SELIGMAN. [L. S.]"

When in 1882 this action was commenced, Joseph Seligman had died, and executors of his will were joined as defendants with Brown. The alleged default was in the failure or refusal to deliver to the plaintiff the two thousand shares of the stock of the railway company, as Brown and Seligman had undertaken by the contract. The plaintiff sought to recover $200,000 and interest. The referee found that the stock had no value, and directed judgment against Brown for nominal or six cents damages; and as to the defendants, executors, the referee directed judgment of dismissal of complaint. Judgments were entered accordingly. The General Term affirmed the latter, and reversed the judgment for nominal damages, and as to the defendant Brown granted a new trial.

Further facts appear in the opinion.

*John E. Parsons* for appellant Brown and respondent Seligman. Plaintiff cannot complain of error in the rulings of the referee. (*Parsons* v. *Sutton*, 66 N. Y. 92, 96; *Gumb* v. *T. T. S. R. Co.*, 114 id. 411; *Uransky* v. *D. D., E. B. & B. R. R. Co.*, 118 id. 304; *Uertz* v. *S. M. Co.*, 35 Hun, 116; *Saffer* v. *D. D., E. B. & B. R. R. Co.*, 24 N. Y. S. R. 210; Code Civ. Pro. § 1338; *Ward* v. *Craig*, 87 N. Y. 550; *R. L. R. Co.* v. *Roach*, 97 id. 378; *Inglehart* v. *T. I. H. Co.*, 109 id.

454; *Clemons* v. *Davis*, 4 Hun, 260; *Coster* v. *City of Albany*, 43 N. Y. 399, 402–404; *Van Cott* v. *Van Brunt*, 82 id. 535; *Gamble* v. *Q. C. W. Co.*, 123 id. 91; *Clark* v. *Bever*, 139 U. S. 96.) If it be assumed that the plaintiff may demand as damages the cost of procuring the 2,000 shares, and that such cost would be $200,000, there is no rule or principle known to the law which supports his claim for that amount, or entitles him to anything more than that which his complaint demanded, the value of the stock. (*Ormsby* v. *V. C. M. Co.*, 56 N. Y. 623; *Tyng* v. *C. W. Co.*. 58 id. 308, 314; *M. & T. Bank* v. *F. & M. Bank*, 60 id. 40, 50; *Whelan* v. *Lynch*, 60 id. 469, 472; *Prince* v. *Connor*, 69 id. 608; *Wehle* v. *Haviland*, Id. 448; *Thayer* v. *Manley*, 73 id. 305, 308; *Gruman* v. *Smith*, 81 id. 25; *Colt* v. *Owens*, 90 id. 368; *Wright* v. *Bank*, 110 id. 237; 1 Sedg. on Dam. [8th ed.] §§ 243, 244, 257; *Gruman* v. *Smith*, 81 N. Y. 25; *Dwyer* v. *Rich*, 1 Metc. 180; *Porter* v. *B. B. R. R. Co.*, 32 Me. 539; *Fosdick* v. *Green*, 27 Ohio St. 484; *Murray* v. *Stanton*, 99 Mass. 345; Pom. on Spec. Perf. § 12; *Cushman* v. *T. M. J. Co.*, 76 N. Y. 365; Pom. Eq. Juris. § 1401; *Conger* v. *N. Y., W. S. & B. R. R. Co.*, 120 N. Y. 29; *Chellis* v. *Chapman*, 125 id. 214.) If the plaintiff had paid $200,000 to the company, and thus obtained the 2,000 shares of full paid stock, neither would it have changed the rule of damage, nor on any theory or rule recognized by the courts have entitled him to recover the sum paid. (*Baker* v. *Drake*, 53 N. Y. 211; *Wright* v. *Bank of Metropolis*, 110 id. 237; *Loker* v. *Damon*, 17 Pick. 284; *Hogle* v. *N. Y. C. & H. R. R. R. Co.*, 28 Hun, 363.) The complaint states no cause of action against the executors of Joseph Seligman, inasmuch as it contains no allegation of inability to procure satisfaction from the co-defendant Brown. (2 Chitty on Cont. 1353; 1 Pars. on Cont. 11, 12, 30; *Getty* v. *Binsse*, 49 N. Y. 385; *Lane* v. *Doty*, 4 Barb. 530; Pom. Eq. Juris. § 409; *Voorhis* v. *Child*, 17 N. Y. 354; *Richter* v. *Poppenhausen*, 42 id. 373; *Hoyt* v. *Bonnett*, 50 id. 538; *Pope* v. *Cole*, 55 id. 124; *Hauck* v. *Craighead*, 67 id. 432; *Smith* v. *Ballantine*,

10 Paige, 101; *Voorhis* v. *Baxter*, 1 Abb. Pr. 13; *Lyon* v. *Park*, 111 N. Y. 350; *Jarvis* v. *Jarvis*, 3 Edw. Ch. 462; *Dash* v. *Van Kleeck*, 7 Johns. 477; *Sackett* v. *Andross*, 5 Hill, 327, 334; *Trist* v. *Cabenas*, 18 Abb. Pr. 143, 146; *People* v. *Marshall*, 7 Abb. [N. C.] 380, 382; *Sanford* v. *Bennett*, 24 N. Y. 20, 23; *People* v. *Supervisors*, 43 id. 130, 135; *Benton* v. *Wickwire*, 54 id. 226; *N. Y. & O. M. R. R. Co.* v. *Van Horn*, 57 id. 477, 478; *McMaster* v. *State*, 103 id. 547, 554; *Johnson* v. *Burrell*, 2 Hill, 238; *Calkins* v. *Calkins*, 3 Barb. 305; *McMannis* v. *Butler*, 49 Barb. 176; *Sayre* v. *Wisner*, 8 Wend. 661; *Stone* v. *Flower*, 47 N. Y. 566; *Goillotel* v. *Mayor, etc.*, 87 id. 441; *Bradley* v. *Burwell*, 3 Den. 61; *Cornes* v. *Wilkin*, 14 Hun, 428; *Johnson* v. *Harvey*, 84 N. Y. 363; *Bronson* v. *Kinzie*, 1 How. Pr. 311, 316; *Brine* v. *Ins. Co.*, 96 U. S. 627; Story on Const. § 1385.) Plaintiff's motion to amend the complaint was properly denied. (*Hendricks* v. *Decker*, 35 Barb. 302; *Ross* v. *Schloss*, 6 id. 308; *Guiterman* v. *Steamship Co.*, 9 Daly, 124; *May* v. *Burras*, 13 Abb. [N. C.] 388; *Robbins* v. *Richardson*, 2 Bosw. 248; *B. F. Co.* v. *Allen*, 12 Civ. Pro. Rep. 71; *King* v. *Barnes*, 107 N. Y. 645; *Smith* v. *Rathburn*, 75 id. 122; *Bennett* v. *Lake*, 47 id. 93; *Gambling* v. *Haight*, 58 id. 623; *Lane* v. *Doty*, 4 Barb. 530; *Brown* v. *Babcock*, 3 How. Pr. 305; *Morehouse* v. *Ballou*, 16 Barb. 289; *Union Bank* v. *Mott*, 27 N. Y. 633.)

*Hamilton Odell* for appellant. Plaintiff was entitled to recover only nominal damages against the defendant Brown. (Sedg. on Dam. 200; *McKnight* v. *Dunlop*, 5 N. Y. 537; *Pollen* v. *LeRoy*, 30 id. 549; *Wilson* v. *Martin*, 1 Den. 601; *Dana* v. *Fiedler*, 12 N. Y. 40; *Fosdick* v. *Green*, 27 Ohio, 484; *Robinson* v. *Noble*, 8 Pet. 181; *Conaughty* v. *S. C. Bank*, 93 N. Y. 401; *Quinn* v. *Van Pelt*, 56 id. 417; *Thayer* v. *Manley*, 73 id. 305; 56 id. 417; *Hamilton* v. *McPherson*, 28 id. 76; *Hecksher* v. *McRue*, 24 Wend. 304; *Clark* v. *Massiglia*, 1 Den. 317; *Dillon* v. *Anderson*, 43 N. Y. 231; *Howard* v. *Daly*, 61 id. 362; *Polk* v. *Daly*, 14 Abb. [N. S.]

156; *Parsons* v. *Sutton,* 66 N. Y. 92; 4 Daly, 258.) The testimony offered by the defendants as to the value of the underground company stock was proper. (*Scattergood* v. *Wood,* 79 N. Y. 263; *Hollender* v. *N. Y. C. Co.,* 19 Abb. [N. C.] 20.)

*Edward C. James* and *Ira Leo Bamberger* for respondent, Barnes. The learned referee erred in the measure of damages. (*Baker* v. *Drake,* 53 N. Y. 211, 220–223; *Thayer* v. *Manley,* 73 id. 307, 308; *Wright* v. *Bank,* 110 id. 237, 246; *West* v. *Wentworth,* 3 Cow. 82; *Clark* v. *Pinney,* 7 id. 396; *Kortwright* v. *C. Bank,* 20 Wend. 91; 22 id. 348; *Arnold* v. *S. Bank,* 25 Barb. 424; *Van Allen* v. *I. C. R. R. Co.,* 7 Bosw. 515, 537; 4 Abb. Ct. App. Dec. 443; *Colt* v. *Owens,* 90 N. Y. 368; *M. & T. Bank* v. *F. & M. Bank,* 60 id. 40, 50; *Whelan* v. *Lynch,* Id. 469, 472; *Prince* v. *Connor,* 69 id. 608; *Wehle* v. *Haviland,* Id. 438; *Gruman* v. *Smith,* 81 id. 25; *Nash* v. *Towne,* 5 Wall. 689, 699; *Knapp* v. *Warner,* 57 N. Y. 688; *Clark* v. *Ins. Co.,* 64 id. 33, 38, 39; *Bates* v. *C. V., etc., R. R. Co.,* 3 T. & C. 16; 59 N. Y. 641; *Pinney* v. *Gleason,* 5 Wend. 393; *Gilbert* v. *Danforth,* 6 N. Y. 585; *Fletcher* v. *Derrickson,* 3 Bosw. 181, 188; *Stephens* v. *Howe,* 2 J. & S. 133; *Murray* v. *Hamson,* 47 Barb. 492, 493; *Puesey* v. *N. J., etc., R. R. Co.,* 114 Abb. [N. S.] 434; *Wakeman* v. *W. & W. M. Co.,* 101 N. Y. 205.) The referee decided that, as Brown and Seligman were joint contractors, a joint action against the survivor and the executors of the deceased would not lie, without an allegation in the complaint, supported by proof on the trial, of the insolvency of the survivor, and of the plaintiff's inability to collect his claim from him. Accordingly he held that as to these executors the complaint should be dismissed. This was error. (*Quackenboss* v. *Lansing,* 6 Johns. 49; *Ernst* v. *Bartle,* 1 Johns. Cas. 319; *Sandford* v. *Halsey,* 2 Den. 264; *Thorpe* v. *Jackson,* 2 Y. & C. 553; *De Agreda* v. *Mantel,* 1 Abb. Pr. 139.) The objection that a cause of action against these executors was improperly joined with a cause of action against the surviving vendee,

appeared upon the face of the complaint and should have been taken by demurrer. (Code Civ. Pro. §§ 447, 452, 488, 499; *Sullivan* v. *R. R. Co.*, 119 N. Y. 348; *Hilck* v. *Reinheimer*, 105 id. 473; *Barnard* v. *Onderdonk*, 98 id. 158; *Barker* v. *Cooks*, 50 id. 689.) The decision of a referee, denying leave to amend, will be reviewed and reversed when general justice will be promoted and future litigation prevented thereby. (*Coates* v. *Donnell*, 16 J. & S. 46, 69; *Beck* v. *Allison*, 56 N. Y. 366; *Stahl* v. *Stahl*, 2 Lans. 60; *Yorks* v. *Peck*, 14 Barb. 644; *Van Riper* v. *Poppenhausen*, 43 N. Y. 68; *Bank* v. *Morgan*, 6 Hun, 346; 73 N. Y. 593.) Mr. Seligman did not die until after the Code of Civil Procedure took effect. If this action had been brought against him and Brown before his death, it is clear that the court, under §§ 758, 452, could have revived it against his executors, and brought them in as co-defendants with Brown after his death. This being so, the action can be brought, after his death, against his executors as co-defendants with Brown in the first instance. The right, in each case, depends upon exactly the same principle, not upon the circumstances whether the death occurred before or after the commencement of the action. (*In re Trustees, etc.*, 31 N. Y. 574, 585; *Morse* v. *Gould*, 11 id. 281; *Van Rensselaer* v. *Snyder*, 13 id. 299; *Van Rensselaer* v. *Ball*, 19 id. 100; *De Agreda* v. *Mantel*, 1 Abb. Pr. 138; *Voorhis* v. *Child*, 17 N. Y. 354; *Master* v. *Blackwell*, 8 Hun, 313; *Randall* v. *Sackett*, 77 N. Y. 480; *Stocking* v. *Hunt*, 3 Den. 274.)

BRADLEY, J. The main controversy has relation to the rule or measure of damages applicable to the breach of the contract upon which this action was founded. While the plaintiff claims that damages cannot be less than two hundred thousand dollars and interest, it is insisted on the part of the defense that they were only nominal. Before proceeding to the consideration of the question in that respect, reference may properly be made to the facts out of which the alleged claim arose. The New York City Central Underground Railway Company was organized under an act incorporating it and

authorizing the company to construct and operate an underground railway in the city of New York, passed in 1868 and amended in 1869. The authorized capital stock of the company was ten millions dollars. At the time the contract of March 26, 1872, was made, the plaintiff was president of the company. He then had some claims against it; and only one hundred and seventeen shares of capital stock had been issued, of which he held sixty-three shares. By the transfer of the sixty shares to Brown and Seligman, they took the control of the organization of the company. The amendments to the charter then pending in the legislature did not become a law, and consequently it was optional with them to either retain their purchase and pay, or surrender what they had received and put an end to the contract. They, however, concluded to treat it as effectual and assumed the undertaking to perform, and afterwards did pay to the plaintiff the twenty-seven thousand and five hundred dollars, and did deliver to the plaintiff certificates of two thousand shares of the capital stock of the company. This was, apparently, full performance, but in fact was not, because that so delivered was not paid stock. And when this was discovered by the plaintiff he offered to return the certificates and demanded such as he was entitled to. Further performance was refused, and this action followed. The only question as against the defendant Brown was one of damages, and the referee found that at the time when he and Seligman undertook to deliver the stock to plaintiff it had no actual or market value, and determined that he was entitled to recover nominal damages only. The stock certainly had no market value. None was in the market. This finding and conclusion were challenged by the plaintiff's exceptions. By reference to the condition of the company it is seen that the total amount of money received by it on account of subscriptions to its stock was five thousand seven hundred dollars, and that was received in 1869 and 1871. The other credits to the capital stock account were in demand loans and special services rendered the company. The various efforts prior to 1872 were unsuccessfully made to raise money for the

purpose of construction of the railway, and the reason why the bonds of the company could not be negotiated was that it had been unable to obtain subscriptions to its capital stock to pay for right of way. The land and consequential damages incident to the construction of the railway were estimated at five millions dollars; and the expenditures by the company for work done towards construction and for land and land damages did not exceed four thousand dollars. The indebtedness of the company was about three hundred and fifty thousand dollars. This was in general terms the situation of the company when the contract of March 26, 1872, was made; and it was known as well to Brown and Seligman as to the plaintiff. Whatever of value they took by the contract was in the franchise of the company, and was dependent upon the use which could be made of it by way of the construction and operation of an underground railway. While the futility of the enterprise tended to show that it never had any actual value, there evidently was hope and expectation of success entertained by Brown and Seligman when they elected to retain the benefit of the contract, and it is in that view insisted by the plaintiff that the stock then had a value which to him may at that time have been available, although later it turned out to have had none, and, therefore, he lost whatever he may have realized by its conversion if it had in due time been delivered to him. There is apparently some force in this suggestion, but it is entirely speculative, assuming that the stock then in fact had no actual value as well as no market value. There was some conflict in the expert evidence upon the subject founded upon the situation of the company. While that on the part of the defendants was that the stock had no value, that of the witnesses called by the plaintiff was to the effect that it was as the situation then appeared, worth par. It may be observed that the plaintiff held the stock represented by the certificate so delivered to him until about September 1, 1874, upon the assumption that it was full paid stock before his discovery that it was otherwise.

The finding of the referee that the stock had neither actual

nor market value was supported by evidence, and for the purpose of this review must be deemed conclusive. But it is insisted by the learned counsel for the plaintiff that the plaintiff should nevertheless have recovered the two hundred thousand dollars and interest upon it because he was entitled to the stock or to a sum which it would cost to obtain it. As a general rule, the damages which a party is entitled to recover against another for a breach of contract are such as will indemnify him for the loss he has suffered by the default. And it is with a view to that result that the rules for ascertaining and awarding damages have been adopted. The purpose of the rule in that respect is to leave the party in no worse, and place him in no better, condition than he would have been if the act or default complained of had not been committed.

It was with a view to such measure of relief, and the adoption of a rule to accomplish it, that the doctrine which gave the highest market value up to the time of the trial as the measure of damages for conversion of property of fluctuating value, as held in *Markham* v. *Jaudon* (41 N. Y. 235) and some prior cases, was overruled in *Baker* v. *Drake* (53 N. Y. 211), and the market value for a reasonable time within which to replace the property was adopted as furnishing the guide to the proper measure of damages and the more satisfactory means of indemnity. In that case the defendants, pursuant to an arrangement with the plaintiff, had purchased stocks to hold and carry subject to his order, so long as he kept his margin good. The defendants disposed of the stock in violation of the agreement. And the court there held, substantially, that an amount sufficient to indemnify a party injured for the loss, naturally, reasonably and proximately resulting from the act complained of, and which a proper degree of prudence on the part of the complainant would not have averted, is the proper measure of recovery when punitive damages are not allowable. And that "the advance in the market price of the stock, from the time of the sale up to a reasonable time to replace it after the plaintiff received notice of the sale, would afford a complete indemnity."

The principle upon which the determination of *Baker* v. *Drake* rested was that the measure of the plaintiff's damages was governed by the opportunity which was afforded by the market for him within a reasonable time to replace the stock on the refusal of the defendant to do so. (*S. C.*, 66 N. Y. 518; *Colt* v. *Ownes,* 90 id. 368.) And in *Wright* v. *Bank of the Metropolis* (110 N. Y. 237), the same rule was held in like manner applicable where stock fully paid for by the owner is through the honest mistake of the pledgee converted by him, and he refuses to replace it. Thereupon the owner may do so within a reasonable time, and the highest market price within that time is the proper measure of damages. This is the recognized rule in this state; and it is applicable alike to actions upon contract as in tort.

In the present case there was no market to resort to for the plaintiff to supply himself with the stock, nor any market value to furnish the measure of damages. The rule applied in the cases last cited was not, therefore, in that sense applicable to the situation in the case at bar. A subscription, however, to two thousand shares of the capital stock of the railway company, and payment of the full amount to the company, would have produced the stock, and it may be assumed that it could not otherwise have been procured. It is upon that ground that the plaintiff insists that the liability of the defendant is measured by that amount. This would have been so if the agreement of Brown and Seligman had been to pay the plaintiff two hundred thousand dollars in the stock of the company. Then their indebtedness or liability would not have been controlled by the value of the stock, but would have been fixed by the contract, but when the specific *quantum* of the stock was made the consideration in that respect for the plaintiff's sale to them, on their failure to deliver it, he was entitled in damages to the equivalent of that which they had undertaken to render.

In the absence of special circumstances in an action for conversion of personal property as well as one for failure to deliver it in performance of a contract where consideration

has been received, the value of the property at the time of such conversion or default, with interest, is the measure of compensation. (*Ormsby* v. *Vermont, etc., Co.,* 56 N. Y. 623; *Parsons* v. *Sutton,* 66 id. 92.) No special circumstances were alleged in the complaint to take this case out of the general rule. Nor was there any fluctuation in the value of the stock succeeding the time for its delivery under the contract to qualify the application of such rule.

The damages which a party ordinarily may recover for breach of contract are those which naturally flow from the default. And if the contract is made in reference to special circumstances affecting the measure of compensation, such circumstances may be treated as within the contemplation of the parties and constitute a basis for the assessment of damages. (*Booth* v. *Spuyten Duyvel R. M. Co.,* 60 N. Y. 487.) They come within the meaning of special damages, and must be the subject of allegation in pleading to entitle the party to make proof of them, unless objection in that respect be waived. In the present case no facts of special character relating to damages were alleged, nor were any established by the evidence further than the mere fact that the stock of the company had no market value. If, notwithstanding that fact, the stock may have had an actual value, a different question would have been presented, for the plaintiff could not be subjected to loss, nor could the defendant be permitted to profit by the fact that the stock had no market value at the stipulated time for delivery. Then other means than those afforded by the market would be resorted to under the contract, as within the contemplation of the parties, to ascertain the amount requisite to full indemnity to the plaintiff. (*Sternfels* v. *Clark,* 2 Hun, 122; 70 N. Y. 608.)

There may be cases in which damages have no support in market values where the value is peculiar to the party entitled to performance, and relief will be given accordingly. (*Scattergood* v. *Wood,* 14 Hun, 269; 79 N. Y. 263; *Parsons* v. *Sutton,* 66 id. 92.) And when the remedy at law for compensation is inadequate or impracticable, it may be found in

equity by way of specific performance. (Pom. Eq. Jur. § 1401.) Those are supposed cases to which the principles of law adapt remedies when they arise. But in the case at bar, the stock not only had no market value, it also had no actual value. Nor does it appear that it would have been of any value to the plaintiff, or of any substantial benefit to him for any purpose if he had received it. The defendant Brown and his associate Seligman did not by the contract undertake to do anything to give any future value to the stock of the company. Thus we have the simple case of a contract to deliver a certificate for a certain quantity of capital stock then having no existence, and when due and thereafter having no value. The claim that because the creation or issue of this worthless stock would cost its par value the plaintiff is entitled to recover that sum, does not seem to have the support of any well-defined principle of law. But it is said that with knowledge of the situation, Brown and his associate absolutely agreed to deliver the stock and, therefore, they were bound to pay the amount requisite to accomplish it without regard to the value of the stock or of its beneficial use to the plaintiff.

In an action at law to recover damages for breach of contract, the question of damages is one of indemnity. And in that respect the remedy founded upon this contract does not differ from that upon any other contract for default in the delivery of property which a party has unqualifiedly undertaken to deliver for a consideration received.

In *Dana* v. *Fiedler* (12 N. Y. 40), the measure of damages for failure to deliver madder pursuant to contract, was founded upon the market value at the time of the default. The question there arose upon the exclusion of evidence, speculative in character, and which for that reason was held inadmissible upon the question of such value.

Nor does *Scattergood* v. *Wood* have any essential application in principle to the case at bar. In that case there was an element of exemplary damages against the defendant, who had wilfully deprived the plaintiff of the use of a test machine designed by him for a special purpose, in consequence of which

he was put to the expense of constructing another for such purpose. Of this intended use the defendant was advised when he appropriated and withheld the machine from the plaintiff. The recovery of the expense of constructing the second one, as damage for the detention of the other, was sustained, although by reason (as it turned out) of its insufficiency, the value of the latter was much less than such cost.

In the present case the action is founded solely upon the failure to deliver to the plaintiff the stock without any supported claim of special circumstances for any damages other than such as flow naturally and reasonably from such default of Brown and Seligman. While the performance of their contract in that respect may have required them to pay to the company two hundred thousand dollars, the entire value of its performance to the plaintiff was in the stock, which they undertook to deliver to him, and this was the only benefit he was entitled to take under that provision of the contract. The value of the stock, or its pecuniary equivalent, was the measure of his injury by the default. And as it had no value, the plaintiff was awarded complete indemnity by the conclusion of the referee that he was entitled to recover nominal damages only.

There was no error in the ruling of the referee by which evidence of value of the stock was received. The complaint alleged that on January 22, 1873, when the plaintiff accepted the certificate before mentioned of stock in performance of the contract, the stock of the company was worth, and salable in the market at its full par or face value, and demanded judgment for that amount and interest from January 23, 1873. This was the situation of the complaint when the evidence upon the question of value was given. And the plaintiff, upon a state of facts embraced in a hypothetical question, called upon the witnesses to state the value of the stock in January, 1873. This was the time when, by the issue tendered in the complaint and taken by the answer, the value of the stock was, by the pleadings, brought in question. And it may be observed that the assumed facts upon which the answers of the wit-

nesses were predicated, were the same and no different at that time than they were on the day when the contract matured.

These views lead to the conclusion that, as to the defendant Brown, the judgment directed by the referee should be sustained. But as the order granting an additional allowance of costs to that defendant may be deemed to have been reversed at General Term, that disposition of the order is affirmed, and the costs recovered treated as reduced accordingly.

The contract was the joint undertaking of Brown and Seligman. The latter having died before the action was commenced, his personal representatives were joined as defendants with Brown. The complaint was as to those executors dismissed by the referee upon the ground that facts sufficient to constitute a cause of action against them were not alleged. Their testator having only the relation of joint contractor with Brown, his death placed the primary liability upon the latter, unless he was unable to pay or insolvent. Upon that fact the liability of those personal representatives to the plaintiff upon the contract was dependent, and that fact was essential to the cause of action against them. (*Grant* v. *Shurter*, 1 Wendell, 148; *Trustees, etc., Orphan House* v. *Lawrence*, 11 Paige, 80; 2 Denio, 577; *People* v. *Cole*, 55 N. Y. 124, and cases there cited; *Hauck* v. *Craighead*, 67 id. 432.) It was not alleged. This defect was available by objection, which was taken at the trial. (Code, § 499.)

It does not appear on what ground the motion to amend the complaint was denied. The plaintiff was not entitled to it as matter of right. And the discretionary power of the referee, exercised in denying the amendment, is not the subject of review here.

The judgment in favor of the defendant Seligman, as modified by the General Term, should be affirmed. And the order reversing the judgment and granting a new trial, as against defendant Brown, should be reversed, and the judgment entered upon the report of the referee (after deducting therefrom the amount of the additional allowance of costs) affirmed.

All concur.

Judgment accordingly.