**Marie D. RAYBORN, Clarence J. Rayborn, Jr., Appellants,**

v.

**The FORT THOMAS BUILDING AND LOAN ASSOCIATION, Appellee.**

Court of Appeals of Kentucky.

May 1, 1970.

Gus Sheehan, Jr., Covington, for appellants.

Philip A. Taliaferro, III, James A. Nolan, Ware, Bryson, Nolan & West, Covington, Louis Arnold, Cincinnati, Ohio, for appellee.

E. SKILES JONES, Special Commissioner.

This appeal from the Kenton Circuit Court is from a summary judgment in favor of the appellee in a foreclosure action against the appellants. The appellants admitted the allegations of the complaint, but counterclaimed, charging negligence of the appellee in not informing appellants that their insurance coverage had expired. Appellants also filed a third-party complaint against the insurer, Covington Mutual Insurance Company. The court dismissed the third-party complaint and counterclaim and entered judgment for appellee on its foreclosure action by way of summary judgment.

Appellants, Marie D. Rayborn and Clarence J. Rayborn, Jr., her son, executed and delivered to appellee, The Fort Thomas Building and Loan Association, hereinafter called Fort Thomas, a promissory note in the sum of $7,400, on December 1, 1959,

with interest at the rate of 6 percent per annum, payable in installments of $83 per month, $63 of which was applied to the reduction of principal and interest, and $20 applicable to an escrow account for the payment of taxes and insurance.

As security for the loan, the Rayborns simultaneously executed and delivered to appellee a mortgage on an apartment building and lot located at 391 Altamont Road, Covington, Kentucky, to which they held a fee simple title. The mortgage contained the following language:

"IN FURTHER CONSIDERATION of the premises first parties (the Rayborns) expressly agree as follows:

\* \* \* \* \* \*

"(2) To keep the mortgaged premises insured at all times against loss by fire in the sum of $7,400 and by· windstorm and other casualty in the sum of $7,400 or in a sum equal to the amount due the Association, under the terms hereof, in an insurance company, or companies approved by the Association, and to deliver all insurance policies on the premises to the Association, with mortgage clauses acceptable to it, to be held by it as collateral security, until the debt secured is fully satisfied. If the obligators fail to keep the mortgaged premises insured according to the requirements hereof, then the Association may obtain the required insurance and pay the premiums therefor. In the event any sum of money becomes payable under said insurance policies the Association shall have the option to receive and apply the same to the reduction of the debt secured or to permit the obligators to receive and use same, or any part thereof, for the purpose of rebuilding or repairing the damaged premises, or for other purposes.

\* \* \* \* \* \*

"(11) The mortgagors further agree to pay monthly such proportionate sums as may be necessary to pay taxes, special assessments and insurance, which sums will be applied by mortgagee to payment of same when due."

On July 13, 1966, a windstorm so severely damaged the building that the only thing of value remaining was the land. A policy of insurance which would have covered this loss expired on May 18, 1965.

At the time of the loss the outstanding balance due Fort Thomas was $5,477.47. Mrs. Rayborn testified by deposition that she held a real estate license and had bought and sold over one hundred houses. She valued the property with improvements at approximately $14,500 before the windstorm and $1,000 thereafter, the value of the lot alone. In addition to being in the real estate business, Mrs. Rayborn was in the insurance business and was an agent for the Covington Mutual Insurance Company. She apparently arranged for insurance coverage on this property from the date of the note and mortgage to May 18, 1960, when she as agent for Covington Mutual acquired a policy covering the property in the amount of $9,000 for a term of five years from May 18, 1960, to May, 18, 1965. As agent for Covington Mutual, she received monthly statements showing the policies she had written, the expiration dates, and the amount of her commissions.

She testified:

\* \* \* \* \* \*

"Q. 363. Based upon the experience you have had in these fields, isn't it your understanding that as a matter of normal practice it is the agent who notifies the insured that their policy is going to lapse unless it is renewed?

A. Yes, but that wasn't in this case.

Q. 364. It wasn't in this case because you were the agent and you wouldn't be sending yourself a notice, isn't that correct?

A. Right, but somebody should have notified me though.

\* \* \* \* \* \*

Q. 399. But you, yourself, never notified anyone to renew it?

A. No."

She previously testified the The Building and Loan Association had not agreed to renew the fire and extended coverage insurance on the property in question.

We agree that by the terms of this mortgage it was the duty of mortgagee to pay the insurance premiums from the escrow account, and it is apparent that mortgagee performed this duty from 1960 to 1965, however, it is equally clear that by the terms of the mortgage, it was the ultimate responsibility of the appellants to keep the mortgaged premises insured.

First Federal Saving & Loan Assn. of Bowling Green v. Savage, Ky., 435 S.W.2d 67, dealt with a very similar situation, however, in that instance the mortgagee had exercised its option under the terms of the note to "effect insurance" on the premises. The court, quoting from the case of Warrener v. Federal Land Bank of Louisville, 266 Ky. 668, 99 S.W.2d 817, 820, stated:

"Up to the point of time when the bank undertook to procure the insurance under its right of election, it could have had no responsibility, but when it set about to do so, the provisions of the mortgage passed from an optional right to an assumed duty."

In the instant action, there is nothing to indicate that the mortgagee assumed or attempted to assume the responsibility of the mortgagors in obtaining insurance coverage on this property. Since the mortgagee had no duty, only a right, to secure insurance coverage if the mortgagors failed to do so, we can only conclude that this unfortunate loss occurred as a result of the failure of the Rayborns to perform a function that they alone were required to do.

The language of the mortgage, coupled with the testimony of Mrs. Rayborn, so indicates.

The judgment is affirmed.

All concur.