GUILLERMO PACHECO et al., Respondents, v J. MORGAN HEUSSLER et al., Defendants, and ERIE COUNTY SAVINGS BANK, Appellant. (Appeal No. 1.)

GUILLERMO PACHECO et al., Appellants, v J. MORGAN HEUSSLER et al., Respondents. (Appeal No. 2.)

Fourth Department, January 21, 1977

*Moot, Sprague, Marcy, Landy, Fernbach & Smythe (Court-land LaValle* of counsel), for Erie County Savings Bank, appellant and respondent.

*Irwin E. Ginsberg* for Guillermo Pacheco and another, respondents and appellants.

*O'Shea, Adamson, Reynolds & Napier (C. DeForrest Cummings* of counsel), for J. Morgan Heussler and others, respondents.

CARDAMONE, J. This is an appeal from a judgment which awarded plaintiffs, Guillermo and Andrea Pacheco, $47,158.75 based upon a jury verdict for damages arising from an uninsured fire loss on premises mortgaged to the bank on which the bank had collected insurance premium escrow payments. The principal question presented is whether a bank, with an option to pay these insurance premiums, may be held in damages when it fails to act following notification to it of the lapse of the fire insurance coverage and a loss occurs. We hold that the bank is liable.

In October, 1962 Erie County Savings Bank loaned Guillermo and Andrea Pacheco $9,900 in the form of an FHA-insured mortgage loan secured by a bond and purchase-money mortgage on residential property in the City of Buffalo. The mortgage provided for monthly payments by the mortgagor into an escrow fund to be held by the bank for the purpose of paying ground rents, insurance premiums, taxes and special assessments. The Pachecos as mortgagors were also obliged under the terms of the mortgage to "keep the improvements * * * on the mortgaged premises, insured as may be required from time to time by the mortgagee against loss by fire and other hazards, casualties and contingencies in such amounts and for such periods as it may require". The Pachecos subsequently secured a fire insurance policy through its broker J. Morgan Heussler with the St. Paul Fire and Marine Insurance Company for a three-year term commencing October 15, 1962. Liability under this policy was limited to $9,900, the amount of the bank loan. Heussler secured a renewal of the policy for

an additional three-year period ending October 15, 1968 with a $10,000 limit of liability on the dwelling and mailed the policy to the bank with "a copy or memorandum" to Mr. Pacheco. It was countersigned on September 13, 1965. In December, 1965 liability under the policy was increased to $15,000 at the request of the insurer (St. Paul). Mr. Pacheco personally paid the premiums on the original 1962-1965 policy as well as that part of the premium covering the December, 1965 increase in liability to $15,000 from $10,000. The bank paid at least one premium in October, 1965. The policy, expiring October 16, 1968, was not renewed and lapsed on that date. Mr. Pacheco testified that he was not aware of the expiration and lapse of fire insurance coverage at that time and that he was not contacted with regard to it prior to such lapse. Mr. Heussler testified that he attempted unsuccessfully to reach the Pachecos by telephone and then by mail as to the impending policy lapse. The bank was aware of the lapse and continued to maintain and collect payments for the escrow account, under the mortgage terms, after the lapse and through February, 1969.

On February 26, 1969 the Pacheco residence and its contents were destroyed by fire. Several hours later Mr. Pacheco discovered that he had no insurance to cover his losses, since the policy had lapsed 134 days earlier. The Pachecos thereafter made no further payment to the bank.

On September 10, 1971 the Pachecos commenced an action to recover damages arising from the fire loss against broker Heussler, his associated insurance agencies (Hunt-Heussler Agency, Inc. and Armstrong-Roth-Cady Co., Inc.), the St. Paul Fire and Marine Insurance Company, and the Erie County Savings Bank. Answers were filed on or about September 24, 1971 by all defendants except the bank which, on October 14, 1971, served an answer and a counterclaim against the Pachecos for $7,827.47 representing an alleged unpaid balance owed on the mortgage loan. On May 15, 1974 by order of Special Term the Pachecos served an amended reply which asserted that the bank had been paid in full for the mortgage loan and that since the bank had assigned the loan, it was not a proper party in interest to assert the counterclaim.

At trial an annual mortgage statement issued by the bank for 1969 to the Pachecos was accepted into evidence. The statement shows a mortgage balance of $7,923.79 on January 1, 1969 and a zero balance on December 31, 1969. The bank

attempted to introduce evidence to explain the zero balance reflected on the mortgage statement. The evidence offered was also an annual mortgage statement for the year 1969, but this statement showed a balance due of $7,827.47, while the statement offered by the Pachecos showed the balance on the FHA mortgage as zero. The bank explained that the mortgage had been converted from FHA to conventional and the exhibit offered showed the balance on the converted Pacheco mortgage. Upon plaintiffs' objection, the trial court excluded the bank's conventional mortgage statement from evidence, stating that it was immaterial. The trial court also refused to admit the exhibit as a business record and later refused to permit an offer of proof with respect to the exhibit.

At the close of proof the trial court concluded that the plaintiffs' mortgage statement constituted overwhelming evidence of payment of the FHA mortgage and, therefore, granted plaintiffs' motion to dismiss the bank's counterclaim for the unpaid balance of the mortgage. It also dismissed plaintiffs' complaint against Heussler, Hunt-Heussler Agency, Inc., Armstrong-Roth-Cady Co., Inc. and St. Paul Fire and Marine Insurance Company on the grounds that plaintiffs had not proved that these defendants were obligated to furnish insurance after the policy lapsed in October, 1968.

The only case submitted to the jury was the Pachecos' claim against the bank. In its charge to the jury the trial court stated: "If you find that there was an agreement then you should find an amount in favor of Pacheco for such an amount as you believe a reasonably prudent businessman would have placed insurance for that amount on the building". The Trial Judge further charged that if the jury found for the plaintiffs, it could return a verdict for as low as one dollar or as much as $38,000. The latter figure was based on plaintiffs' proof of cost of replacement after the fire loss. The jury returned a verdict of $38,000.

Following the trial the bank moved for judgment notwithstanding the verdict or, in the alternative, a new trial. The bank also moved for a reduction of the jury verdict. Plaintiffs cross-moved for an order to amend the pleadings to conform to the proof and to amend their *ad damnum* clause upward from $34,000 to $38,000. The trial court reduced the jury verdict to $34,000 and denied all the other motions.

The bank appeals from the judgment awarding plaintiffs $47,158.75 and from that part of the Supreme Court order

dismissing its counterclaim to recover the claimed mortgage indebtedness of $7,827.47; the order denying the bank's post-trial motions and the order at Special Term which permitted plaintiffs to serve an amended reply to the bank's counterclaim. Plaintiffs' cross-appeal from the dismissal of their complaint as against defendants J. Morgan Heussler, Hunt-Heussler Agency, Inc., Armstrong-Roth-Cady Co., Inc. and St. Paul Fire and Marine Insurance Company, the denial of their cross motion for an order amending the *ad damnum* clause to conform to the proof and the jury verdict and the granting of the bank's motion for a reduction of the jury verdict from $38,000 to $34,000.

As noted, the principal question is whether the bank as mortgagee was liable to plaintiffs as mortgagor for the failure to renew fire insurance prior to the loss sustained on the mortgaged premises. Paragraph 13 of the mortgage provides that the mortgagor will keep the improvements on the mortgaged premises insured against loss by fire and will pay promptly, when due, any premiums on such insurance. Initially it is the duty of the mortgagor to keep the mortgaged premises insured (see Real Property Law, § 254, subd 4). Absent an agreement to the contrary, the primary obligation to obtain such insurance is upon the mortgagor (see *Hassell v Sterling Fed. Savs. & Loan Assn.,* 132 Ill App 2d 1005; *Rayborn v Fort Thomas Bldg. & Loan Assn.,* 453 SW2d 558 [Ky]; *Hudson v Ellsworth,* 56 Wash 243; 3 Couch, Insurance [2d ed, 1960], § 25.84). Monthly payments to the bank to be held in escrow to be used for the payment of taxes and fire insurance premiums do not per se constitute a delegation of the duty to the bank to make such payments *(Boyce v National Commercial Bank & Trust Co. of Albany,* 41 Misc 2d 1071, 1077, affd 22 AD2d 848, mot for lv to app den 15 NY2d 487; see, *Matter of Surrey Strathmore Corp. v Dollar Sav. Bank of N.Y.,* 36 NY2d 173). Nevertheless, the bank's reliance upon *Boyce* as controlling the determination of this appeal is misplaced. At *nisi prius* the court in *Boyce* held that the defendant insurance company was liable for fire losses covered by the policy but that the bank could only be held liable for a subsequent fire loss if a demand for payment was made by the mortgagor or the insurance company and the bank refused or failed to make such payment. On appeal, however, the Appellate Division affirmed the lower court's determination insofar as it held the insurer liable based upon a factual finding that the

insurer had failed to give notice of cancellation to plaintiff insured. It withheld consideration, however, of the legal and factual issues relating to plaintiff's claims against the defendant bank and directed that such claim be held in abeyance pending the disposition of the plaintiff's suit against the insurance company.

In the instant case the mortgagee bank had the option upon the mortgagor's default, to keep the property insured. Paragraph 13 of the mortgage agreement provides for the mortgagor's reimbursement for insurance premiums paid by the mortgagee upon the mortgagor's default in so insuring the buildings or paying the premiums, and there is evidence that the mortgagor did in fact make one payment in October, 1965. Further, the bank maintained the escrow account, collecting funds from plaintiffs sufficient to pay the insurance premiums after the lapse of coverage through the date of the fire even though it was aware of such lapse and plaintiffs were not.

We conclude that the jury properly found as a matter of fact that a contract existed between the plaintiffs and the bank. It further found that the bank breached this contract by failing to exercise its option under paragraph 13 of the mortgage. Following notification to it of the lapse of fire insurance coverage, and without notifying plaintiffs of such lapse, the bank continued to collect monthly from plaintiffs' escrow payments to cover the fire insurance premiums. We also conclude that the jury could properly find that plaintiffs might reasonably have relied upon such collection of escrow payments as a representation by the bank that fire insurance had remained in force. This breach of duty under the contract gave rise to a right in plaintiffs to seek damages from the bank (see *First Fed. Sav. & Loan Assn. of Bowling Green v Savage,* 435 SW2d 67 [Ky]).

We recognize that all of the elements of a contract of adhesion are here present because the subject of the contract in the mortgage relates to a necessity, i.e., shelter, and because the parties are not in *pari passu* (since Mr. Pacheco, a native born Puerto Rican, could speak English better than he could read or write it and his wife was unable even to speak English) and because the mortgage, drafted by the bank on its own form, was presumably on a "take it or leave it" basis. Such could arguably serve as a rationale for the conclusion that we reach in this case (see *Matter of Surrey Strathmore Corp. v Dollar Sav. Bank,* 36 NY2d 173, 178, *supra).* However,

reasoning upon such concepts is often untrustworthy and we prefer to rest our decision upon what rights, duties and obligations the parties are found to have intended *(supra,* p 176). In any event, we believe that the trial court correctly submitted this case to the jury.

We find, however, that the trial court erred in dismissing the bank's counterclaim which sought recovery of $7,825.47 alleged to be the unpaid balance owing on the mortgage. Following the fire and determination that the subject property was uninsured, the bank made a claim under a policy issued by its underwriters for the unpaid balance of the mortgage and received the sum of $7,856 for which the bank executed a loan receipt under which repayment was secured by any claim and recovery the bank should receive in its name from the mortgagors. As a defense to the counterclaim plaintiffs presented a mortgage statement showing a zero balance as of December 31, 1969. The issue of discharge or nonpayment of the mortgage obligation was one for the jury. The mortgage statement proffered by plaintiffs raised only a presumption of payment subject to being rebutted by the mortgage statement offered by the bank. With both statements before it the jury could determine whether there was payment or nonpayment of the mortgage obligation. By excluding the exhibit offered by the bank the trial court effectively removed this issue from the jury and, as a consequence, improperly dismissed the bank's counterclaim.

The trial court correctly dismissed plaintiffs' complaint as against Heussler, Hunt-Heussler Agency, Inc., Armstrong-Roth-Cady Co., Inc. and St. Paul Fire and Marine Insurance Company since the policy issued by these defendants expired on October 16, 1968, was not renewed and lapsed on that date.

Under the court's charge the jury awarded plaintiffs $38,000, which represented the replacement cost of the improvements on the mortgaged property. This was error. The damages awarded should only be equal to the value of the performance to which the plaintiffs were entitled at the time of the breach and should, therefore, place the plaintiffs in as good a position as they would have been had the bank abided by its agreement *(Barnes v Brown,* 130 NY 372). In view of this improper award, there must be a new trial limited in the case against the bank solely to the question of damages.

Finally, an intermediate Special Term order permitting plaintiffs' amended answer to the counterclaim was properly

granted. Such amendments are freely granted (CPLR 3025, subd [b]) and we find that no prejudice resulted.

MARSH, P. J., MOULE, DILLON and GOLDMAN, JJ., concur.

Judgment and order, in Appeal No. 1, unanimously reversed, without costs, and a new trial granted in accordance with opinion by CARDAMONE, J.

Judgment, in Appeal No. 2, unanimously affirmed, without costs; plaintiffs' appeal from order denying their cross motion unanimously dismissed as moot.