RENDERED: FEBRUARY 25, 2022; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-0091-MR

BRYAN S. WOOD AND NICK WOOD
LOVE, F/K/A AMBER WOOD LOVE,
AS ADMINISTRATOR OF THE
ESTATE OF RHONDA WOOD
ZDROJOWY[1]                                                    APPELLANTS


                  APPEAL FROM BOYLE CIRCUIT COURT
v.          HONORABLE BRIAN K. PRIVETT, SPECIAL JUDGE
                       ACTION NO. 18-CI-00313


CENTRAL KENTUCKY FEDERAL
SAVINGS BANK                                                      APPELLEE


                             OPINION
                             AFFIRMING

                         ** ** ** ** **

BEFORE:  CALDWELL, CETRULO, AND JONES, JUDGES.

CALDWELL, JUDGE:  The Appellants, Bryan S. Wood and Nick Wood Love,

f/k/a Amber Wood Love, as Administrator of the Estate of Rhonda Wood

---

[1] The notice of appeal contained a misspelling of the Estate, naming the "Estate of Rhona [sic] Wood Zdrojowy."  The record makes it clear that the former Mrs. Wood's first name was, in fact, Rhonda, not Rhona.

Zdrojowy ("the Woods"), seek relief from the decision of the Boyle Circuit Court's grant of summary judgment in favor of the Appellee, Central Kentucky Federal Savings Bank ("Bank"). The Woods had filed suit against the Bank alleging breach of contract for failure to maintain insurance coverage on a home purchased by the Woods for which the Bank had provided a mortgage. The circuit court entered summary judgment in favor of the Bank. We affirm.

## FACTS

In December of 1998, Dr. Bryan Wood and his wife, Rhonda, purchased a home in Danville, Kentucky, executing a promissory note and mortgage with Central Kentucky Federal Savings Bank for the purchase. At the time, the Woods were living in Oklahoma and Dr. Wood had just accepted the position of Director of the Emergency Department at Ephraim McDowell Hospital. Because they were purchasing the home from afar, the Bank assisted them in securing necessary homeowner's insurance. The Bank facilitated acquiring a policy covering the home and its contents through State Farm as the Woods told the Bank previous insurance had been obtained through that insurance company.

Every month, a part of the Woods' mortgage payment was placed in escrow and used by the Bank to pay the insurance premiums, which were actually remitted by the Bank. This arrangement persisted until 2013.

In September of 2013, State Farm insists that it noticed the Bank and the Appellants that it would not be renewing the coverage when the current insurance policy term expired on December 18 of that year. Neither the Bank nor Dr. or Mrs. Wood[2] acknowledged receiving the notice. The Bank became aware of an issue with the policy when the annual billing notice was not received, and an employee reached out to the local State Farm agent to inquire about the missing invoice. The employee was told that the Woods would have to contact State Farm, but was not informed that the insurance company had elected not to continue the policy because of "overall claim activity" by the Woods.

An employee of the Bank attempted to contact Mrs. Wood on her cell phone and was not able to reach her. On December 17, 2013, the Bank sent Mrs. Wood a notice at the subject address stating that if insurance was not secured on the residence, the Bank would place insurance covering only the structure and not the contents ("force-placed insurance"). Mrs. Wood was out of town on a holiday vacation and did not receive the notice until she returned home. A fire occurred on December 26, 2013, shortly after Mrs. Wood's return, destroying the home and contents. Prior to the fire, the Bank had obtained force-placed insurance to protect

_____

[2] The Woods were divorced in 2012 and only the former Mrs. Wood was living in the residence. Dr. Wood had executed a quitclaim deed granting his interest in the property to Mrs. Wood as part of the property settlement. However, he remained obligated to the Bank on the promissory note and mortgage.

-3-

its interest in the property. However, at the time of the fire, there was no insurance in place to cover the Woods' equity in the home or its contents.

Mrs. Wood, then remarried and known as Rhonda Wood Zdrojowy, passed away on June 29, 2015, and her child and only beneficiary, Amber Wood Love, n/k/a Nick Wood Love, was named Administrator of her estate. Thereafter, in August of 2018, the Woods sued the Bank, State Farm, and the local State Farm agent in Boyle Circuit Court, alleging breach of contract and breach of fiduciary duty. State Farm and the local agent moved for dismissal, which was granted and affirmed on appeal.[3] The Bank filed a motion for summary judgment, which was likewise granted. The Woods appeal that determination.

## STANDARD OF REVIEW

The standard of review of a trial court's determination on a motion for summary judgment is *de novo*, as such is a pure question of law. *Cmty. Fin. Servs. Bank v. Stamper*, 586 S.W.3d 737, 741 (Ky. 2019). "A grant of summary judgment is reviewed *de novo* because factual findings are not at issue." *Feltner v. PJ Operations, LLC*, 568 S.W.3d 1, 3 (Ky. App. 2018), *discretionary review denied* (Mar. 6, 2019) (citing *Pinkston v. Audubon Area Community Services, Inc.*, 210 S.W.3d 188, 189 (Ky. App. 2006)).

---

[3] *Wood v. State Farm Fire & Cas. Co.*, No. 2019-CA-000462-MR, 2020 WL 1898401 (Ky. App. Apr. 17, 2020).

# ANALYSIS

The Woods argue several theories which place liability for the failure to adequately insure the home and its contents on the Bank. We find these theories of liability unpersuasive and affirm the trial court.

## A. Breach of Contract

The Woods allege that the Bank breached the mortgage contract when it failed to obtain sufficient insurance to cover their interests, as well as the Bank's, after the State Farm policy was terminated by the insurer. The trial court found that the plain language of the mortgage contract belies the Woods' claim, and we agree.

Paragraph 5 of the mortgage reads:

> Hazard Insurance. Borrower shall keep the improvements now existing or thereafter erected on the Property insured against loss by fire, hazards included with in the term "extended coverage," and such other hazards as Lender may require and in such amounts and for such periods as Lender may require; provided, that Lender shall not require that the amount of such coverage exceed that amount of coverage required to pay the sums secured by this Mortgage.

Under the contract, it was the Woods' responsibility to obtain and maintain coverage in an amount equal to the amount of indebtedness even if the Bank had a responsibility to remit the payments from funds held in escrow for such purpose. Further, it is not clear that the Bank *could* have instituted a contract

covering the contents of the property as the Bank had no ownership interest in the personalty contained in the home. *See* KRS[4] 304.14-060.[5]

In *Rayborn v. Fort Thomas Bldg. & Loan Ass'n*, the Court held that the terms of a mortgage placing responsibility for obtaining and maintaining insurance coverage on the subject property is the responsibility of the mortgagor, even when, as here, the mortgagee paid the premiums for such insurance from escrowed funds. 453 S.W.2d 558 (Ky. 1970). "Since the mortgagee had no duty, only a right, to secure insurance coverage if the mortgagors failed to do so, we can only conclude that this unfortunate loss occurred as a result of the failure of the Rayborns to perform a function that they alone were required to do." *Id.* at 560.

Paragraph 7 of the mortgage provides:

Protection of Lender's Security. If Borrower fails to
perform the covenants and agreements contained in this
Mortgage . . . then Lender at Lender's option, upon
notice to Borrower, may make such appearances,

---

[4] Kentucky Revised Statutes.

[5]     (1) No contract of insurance of property or of any interest in property or arising from property shall be enforceable as to the insurance except for the benefit of persons having an insurable interest in the things insured as at the time of the loss.
(2) "Insurable interest" as used in this section means any actual, lawful, and substantial economic interest in the safety or preservation of the subject of the insurance free from loss, destruction, or pecuniary damage or impairment.

KRS 304.14-060.

"Insurable interest is that interest in the subject matter insured by virtue of which the person insured will derive pecuniary benefit or advantage from its preservation, or will suffer pecuniary loss or damage from its destruction or injury by the happening of the event insured against." *Patrick v. Kentucky Farm Bureau Mut. Ins. Co.*, 413 S.W.2d 340, 343 (Ky. 1967).

-6-

> disburse such sums and take such action and is necessary
> to protect Lender's interest . . . .

Because the Woods had failed to comply with their duties under Paragraph 5, the Bank acted pursuant to Paragraph 7 to obtain force-placed insurance to protect its interests. Under the clear language of the contract, the Bank had no duty to obtain coverage over that amount of remaining indebtedness. In fact, the clear terms of the contract restricted the Bank from securing insurance in an amount greater than its interest.

As noted by the trial court, mortgage contracts are contracts between the borrower and lender and the common rules of contract interpretation apply. "The rules of contract interpretation apply to our review of the language of a mortgage." *First Commonwealth Bank of Prestonsburg v. West*, 55 S.W.3d 829, 835 (Ky. App. 2000) (citing *Calomiris v. Woods*, 353 Md. 425, 727 A.2d 358, 362 (1999)). The language in paragraphs 5 and 7 is clear. Therefore, it is not only unnecessary to resort to any extrinsic evidence of the parties' course of dealing, as the Woods urge, but to do so would be inappropriate. *See Catron v. Citizens Union Bank*, 229 S.W.3d 54, 57 (Ky. App. 2006). The terms of the mortgage are unambiguous, and it would not be appropriate to ignore the express terms of the contract without reason. Regardless, the express terms of the mortgage, as noted above, prohibited the Bank from obtaining force-placed insurance in an amount greater than the Bank's exposure, even if they could have obtained such insurance.

-7-

The Woods would have us find that the failure of the Bank to notify them of the need to obtain force-placed insurance, via certified mail, would equate to a breach of such import so as to impute duties not bargained for under the mortgage contract and cause the Bank to be liable for the personal losses of the Woods. We will not so find.

The Bank points out that if the former Mrs. Wood was out of town so as not to receive the first-class mail notification from the Bank announcing the need to force-place insurance, she would not have received a certified mail notification either. Further, it is not the method of notification that caused the insurance to lapse, but rather the actions of the Woods, in claiming coverage for past casualties, even if not of their own making, which led to the insurance company's decision not to renew the coverage. The mortgage contract is clear; the duty to ensure the property lay with the Woods pursuant to paragraph 5 of the contract. Further, the contents of the home are wholly irrelevant to the mortgage and the Bank only was to force place insurance in an amount to "protect Lender's interest."

**B. Breach of Fiduciary Duty**

Despite a dearth of caselaw supporting the contention that the Bank owed them a fiduciary duty, the Woods maintain such duty exists. Rather, caselaw makes clear that a bank owes no fiduciary duty to its customers.

A fiduciary duty is defined as "a special confidence reposed in one who in equity and good conscience is bound to act in good faith and with due regard to the interests of the one reposing confidence." *Steelvest* [*v. Scansteel Service Center, Inc.*], 807 S.W.2d [476] at 485 [(Ky. 1991)], *quoting Security Trust Co. v. Wilson*, 307 Ky. 152, 210 S.W.2d 336 (Ky. 1948). As a general rule, banks do not owe a fiduciary duty to their customers. *de Jong v. Leitchfield Deposit Bank*, 254 S.W.3d 817, 822 (Ky. App. 2007).

*Snow Pallet, Inc. v. Monticello Banking Co*., 367 S.W.3d 1, 4 (Ky. App. 2012).

The Bank owed no fiduciary duty to the Woods. And the fact that the Bank facilitated the placement of the policy at the onset of the contractual relationship and paid insurance premiums with escrowed funds, as alleged by the Woods, are insufficient facts upon which to so find. There is no genuine issue of material fact so as to hold summary judgment was improper. Looking at the factual allegations of the Woods in a light most favorable to them, there has not been a sufficient factual predicate to sustain the allegation of breach of fiduciary duty.

To make out a claim that a fiduciary relationship existed, the party claiming the fiduciary relationship must first show the relationship existed before the transaction that is the subject of the action. Second, the party claiming a fiduciary relationship must show that reliance was not merely subjective. Third, the party claiming a fiduciary relationship must show that the nature of the relationship imposed a duty upon the fiduciary to act in the principal's interest, even if such action were to the detriment of the fiduciary.

*Ballard v. 1400 Willow Council of Co-Owners, Inc.*, 430 S.W.3d 229, 242 (Ky. 2013) (citations omitted).

While the Bank and the Woods had a fifteen-year relationship before the insurance lapse and fire occurred and the Woods have shown that they, in fact, relied upon the Bank to make the premium payments from escrowed funds, there has been no factual allegation concerning the third requirement. The Woods have forwarded no factual predicate for a finding that the Bank was required to act in the Woods' interests to the detriment of its own actions. Rather, the clear terms of the contract between the parties established that the Bank had permission to act in its own interest by obtaining force-placed insurance. In no way can this be argued to be in favor of the Woods and contrary to the Bank's interests. Summary judgment was therefore proper and appropriate.

## **CONCLUSION**

For the foregoing reasons, we affirm the Boyle Circuit Court's order granting the Bank summary judgment.

ALL CONCUR.

BRIEFS FOR APPELLANTS:

David J. Guarnieri
Trevor M. Nichols
Lexington, Kentucky

BRIEF FOR APPELLEE:

Brendan J. Shevlin
Danville, Kentucky