PAINTER, APPELLANT, *v.* THE TWINSBURG BANKING CO., APPELLEE.

(No. 3982—Decided April 4, 1949.)

*Mr. William N. Shane* and *Mr. Ray J. McGowan,* for appellant.

*Messrs. Snyder, Seagrave, Roudebush & Adrion* and *Messrs. Foust & Holden,* for appellee.

DOYLE, J. Josephine Painter and The Twinsburg Banking Company entered into an agreement, later consummated, in which the banking company promised to finance Mrs. Painter's purchase of real estate, consisting of land and several buildings, by the making of a loan of $4,500, secured by a note, and a mortgage on the property.

It is claimed that the bank, acting through its president, agreed to have the buildings insured against fire loss, and that the failure and neglect of the bank to secure a coverage resulted in loss and damages as a consequence of fire.

At the conclusion of all the evidence, the court directed a verdict for the defendant bank, and entered its judgment thereon. The appeal is from this order. It is claimed that the developed facts were sufficient to require the submission of the question of liability to the jury, and the court's failure so to do constituted error prejudicial to the rights of the plaintiff.

The record of the trial reveals evidence which tends to prove that in April, 1945, upon the suggestion of the bank officials, the plaintiff made an application for a loan to finance the purchase of the real estate heretofore mentioned; that several days later the loan was approved and the plaintiff was notified by the defendant to appear and sign a note and a mortgage in the amount of the loan.

The plaintiff and her husband, pursuant to the instruction, executed the instruments, and, in the course of this transaction, the plaintiff inquired of the bank whether she should secure fire insurance on the property. The bank official replied that insurance should not be obtained until the property had been transferred to her. Thereupon the executed note and mortgage were left with the bank, and the contemplated loan was held in abeyance until the title to the property in the name of the grantor was shown to be clear.

Later, in June of 1945, plaintiff was notified by the bank that the title was clear and that she should appear at the bank to complete the transaction. This she did, and, during the negotiations, the president of the bank brought up the subject of fire insurance;

and, after discussion, it was determined that $3,500 was the proper amount to place on the building which later burned. Mr. Roxbury, the bank president, then said: "Do you want us to handle this insurance for you through our bank?" He was told to do so; following which, discussion was had of the manner of premium payments. The bank official then said that he would obtain the policy, and, in connection with the premium payments, he would "hold it on your mortgage or you could write in and authorize me to take the money out of your bank account."

Several days later, the deed to the property was recorded, and within two minutes thereof the mortgage was likewise placed on record; and the negotiations with respect to financing and title came to a close.

Later on, in January, 1946, the building in question burned to the ground. It was then discovered that fire insurance had not been obtained. There is testimony to the effect that after the fire the bank president, in answer to questions about the insurance, said: "Evidently, when I went away on my vacation, my secretary failed to follow my instructions." At another place in the record is found this claimed statement of the president: "I am sorry I muffed up on taking out insurance, but it is just your hard luck."

The officers of the defendant company denied any agreement to secure insurance, and denied making the statements set forth above.

■ The mortgage deed executed by the plaintiff contained a provision that the "grantors agree to keep the buildings on said premises at all times until payment of said note, * * * insured against loss or damage by fire, in the sum of at least $4,500 and under policies approved by and deposited with the grantee and which shall provide for the payment of any loss

under the same to the grantee or its assigns as its or their interest may appear,'' and ''that if such insur-ance be not so procured the grantee may procure the same and pay the premiums therefor'' and have a lien ''by virtue of this mortgage on said premises'' to se-cure such premium payments by the mortgagee.

We do not question the general rule that parol evi-dence of extrinsic facts is inadmissible to vary or con-tradict a written contract. Nor do we determine that the contract under consideration comes within any of the rules which exempt certain factual situations from the rigor of the doctrine. 9 Ohio Jurisprudence, Con-tracts, Section 399.

Under the written provisions of the mortgage, it was the duty of the mortgagor to insure the mortgaged property, not only for her own benefit, but likewise for the benefit of the mortgagee, who, in the event of a fire, would be entitled to a share of the payment to ap-ply on the principal of the note and mortgage. There was, however, no obligation of the mortgagor to per-sonally secure the insurance. She could contract with another to care for this business detail. And, if the contract was based upon a consideration, she could hold the agent responsible for damages resulting from his negligence or breach of contract. Such verbal agreement, in which the mortgagor employs the mort-gagee as her agent, is not contradictory to or in de-rogation of the written agreement in the mortgage.

The question usually presented for determination in cases of this character, in which the mortgagee is claimed to have undertaken an agency, is whether the agreement to insure is merely gratuitous or whether it is based upon consideration. And, in deciding this question of consideration, it is proper to find that there is sufficient consideration for the promise to in-

sure if the execution and delivery of the mortgage, the agreement to procure insurance, the disbursement of the money loaned, and the recording of the deed and mortgage, is one continuous business transaction. If it is, then the giving of the note and the mortgage, and the borrowing of the money with promise to pay interest, presents sufficient consideration to support a contract with a mortgagee which makes such mortgagee the agent of the mortgagor to procure the fire insurance.

If, however, the promise of a mortgagee to insure the mortgaged premises is made after the completion of the business transaction and was not a part of it, then such agreement would lack consideration, unless there is shown to be consideration of a kind other than that mentioned above. See 41 A. L. R., 1284; 130 A. L. R., 600.

It is the conclusion of the members of this court that there is sufficient evidence in the record for submission of the various disputed facts to the jury, with proper instructions on the law, and for this reason the rendering of judgment for the defendant as a matter of law was error prejudicial to the rights of the plaintiff. The judgment will be reversed and the cause remanded.

*Judgment reversed.*

STEVENS, P. J., and HUNSICKER, J., concur.