FERRIS E. TRAYLOR AND PROPERTY DEVELOPERS, INC. *v.* LAFAYETTE NATIONAL BANK.

[No. 1-573A105. Filed November 26, 1973. Rehearing denied January 8, 1974. Transfer denied May 3, 1974.]

*Early, Arnold & Ziemer,* of Evansville, for appellants.

*Robert H. Hahn, Jeffrey R. Kinney, Bamberger, Foreman, Oswald and Hahn,* of counsel, of Evansville, *Stuart, Branigin, Ricks & Schilling,* of Lafayette, for appellee.

LOWDERMILK, J.—Plaintiff-appellee brought this action against defendants-appellants to recover on a promissory note in the principal amount of $500,000, together with foreclosure

of a security interest in and to common stock of Telesis Corporation.

The note sued on was dated March 20, 1969, and was payable "on demand or, if no demand is made, then eleven (11) months after date" to the order of the plaintiff-appellee.

Subsequent to the execution and delivery of said note and after the appellee bank had made demand for immediate payment the parties hereto entered into an "agreement" whereby the bank agreed to forebear bringing suit for enforcement or payment of the note for six months and the defendant-appellant delivered to John E. Early, as agent for the bank, the certificates of Telesis stock with separate instruments of assignment, assigning such stock to be held as collateral security for the debt. This instrument was executed July 13, 1970.

On said date an addendum to such agreement was entered into by the parties, which provided that defendants-appellants had the right to substitute certain collateral in lieu of the stock of Telesis Corporation. Said addendum is as follows, to-wit:

"9. At any time within six (6) months from the date hereof, Traylor and Developers may substitute collateral for the stock described in Exhibit B attached hereto consisting of a Contract to sell a beer distributing company for One Hundred Thirty-Five Thousand Dollars ($135,-000.00) plus real estate having a value of not less than Five Hundred Fifteen Thousand Dollars ($515,000.00) as evidenced by qualified appraisals thereof. Upon delivery of said substituted collateral to the Bank, Early shall release the said stock to Traylor."

Thereafter, on February 11, 1971, the obligation to the bank was delinquent and Mr. Early duly delivered to the bank the stock certificates representing the capital stock of Telesis Corporation.

This was followed by the present suit to collect on the note, and for the foreclosure of the security interest of the bank

as to the capital stock of Telesis Corporation. The principal was $500,000, and the accrued interest was $161,398.59 as of October 23, 1972, with a daily interest accrual thereafter of $136.99.

Defendant-appellant, Property Developers, Inc. (PDI), filed answer of denial and admissions to plaintiff's complaint and defendant-appellant Traylor filed a second Paragraph of answer denying consideration for the execution by him of the promissory note and denying consideration for the execution by him of a written security agreement.

Defendant-appellant, PDI also filed its counterclaim, alleging a joint venture with the plaintiff-appellee under the terms of which PDI was to purchase and develop real estate known as Pineda Island and the bank was to loan money from time to time as needed for the purchase and development of said real estate, and the parties were to share in the profits of said joint venture. Said counterclaim further alleged the bank loaned PDI $500,000 but thereafter refused to make additional loans and refused to continue the joint venture for the development of said Pineda Island. It further alleged that a result was that on the bank's refusal as above set forth the joint venture on Pineda Island was discontinued to PDI's damage in the amount of one and one-half million dollars.

In the trial of the cause defendant PDI offered evidence to support its counterclaim against the appellee bank. The evidence offered consisted of defendants' Exhibit No. 2, which was a letter from Ferris E. Traylor to Mr. Burr S. Swezey of the plaintiff bank, stating Mr. Traylor's version of how they could set up a land purchase revolving credit line together with the proposal thereof.

Defendants' Exhibit No. 7, which was a letter under date of February 27, 1970, from Mr. Traylor to Mr. Swezey was also offered into evidence. In this letter the bank is informed that Mr. Traylor would get a mortgage on Pineda Island to Swezey's bank as quickly as possible.

PDI offered to introduce into evidence at trial in support of its counterclaim defendants' Exhibits 2 and 7; the court sustained objections to each exhibit, along with the testimony of defendant-appellant Traylor regarding the agreement which was the basis for the counterclaim of PDI. Defendants-appellants made an offer to prove in support of the introduction of defendants' Exhibits 2 and 7 and the testimony of Mr. Traylor.

The offer to prove was made to show that Mr. Traylor would testify as to the terms of an agreement made on behalf of PDI with the plaintiff-bank about February or March, 1969. The offer to prove went further to show that if the witness Traylor was permitted to testify that in February, 1969, plaintiff-bank and PDI entered into a joint venture agreement under the terms of which PDI was to purchase and develop real estate known as Pineda Island near Mobile, Alabama, and the plaintiff-bank was to loan money from time to time to PDI as needed for the purchase and to develop the real estate and the parties were to share the profits of the joint venture.

The offer to prove went further and showed in detail the obligations of and benefits to the respective parties and that pursuant to the agreement PDI purchased Pineda Island and expended a large sum of money thereon, to its damage, and the plaintiff-bank refused to continue with the joint venture for the development of Pineda Island and consequently PDI was unable to go ahead with the project to its damage in the principal amount of $2,670,719.58.

After the offer to prove plaintiff-appellee bank moved to publish Mr. Traylor's deposition and as a response to Mr. Early's offer to prove, read into evidence portions of the deposition.

Thereafter, the record was made showing the parties agreeing and stipulating that the deposition of Mr. Traylor was admitted into evidence for the purpose of hearing on the offer to prove.

PDI contends that the court erred when it excluded the aforementioned exhibits, along with the testimony of Mr. Traylor. PDI first argues that under the parol evidence rule in the Uniform Commercial Code, § 2-202, the excluded evidence was admissible. However, this argument is without merit, since Article 2 of the Uniform Commercial Code applies principally to the sale of goods and not to secured transactions.

PDI maintains that its position at trial and on appeal is that the promissory note and the security agreement are independently enforceable and admit that PDI is in default on the note. However, PDI contends that the evidence excluded would show that the bank and Traylor, on behalf of PDI, had entered into a joint venture agreement, sometimes called "profit participation loan." PDI alleges that the bank had breached the joint venture agreement and claims damages.

It is the position of PDI that there is no conflict between the note and the joint venture agreement and that the two can co-exist harmoniously.

The bank contends that the offer to prove was inadequate in and of itself as the same is merely a statement of generalities and conclusions; that none of the terms of the alleged agreement were set out or alluded to in the offer.

The bank next argues that the evidence, if admitted would have contradicted the terms of the note and security agreement. This, of course, would not be allowed under the parol evidence rule wherein a written instrument cannot be changed by parol evidence in the absence of fraud or mistake. *Hauck* v. *2d National Bank of Richmond* (1972), 153 Ind. App. 245, 286 N.E.2d 852. The bank contends that the deposition of Traylor, alluded to hereinabove, shows that the alleged joint venture agreement and the note were repugnant to each other. The note is complete on its face and makes no mention of any other agreements.

Finally, the bank contends that any error would be harmless since the deposition shows on its face that no joint venture agreement was ever made, as the bank never agreed to any contract and there was no meeting of the minds. *Englebrecht* v. *Property Developers, Inc.* (1973), 156 Ind. App. 354, 296 N.E.2d 798.

The real question is whether the trial judge committed error by refusing the proferred evidence and not permitting PDI to introduce evidence to establish its counterclaim based on the joint venture agreement.

The counterclaim and the joint venture agreement upon which it is based would not contradict or vary the terms of the written promissory note. Although the counterclaim alludes to the note it in no way infers that the note would not be enforceable or would be altered in any way by the counterclaim. Thus, the counterclaim shows on its face that it is a separate and distinct oral agreement. *Thompson* v. *Abbett* (1972), 154 Ind. App. 503, 290 N.E.2d 468.

The parol evidence rule makes any evidence which would vary or modify or contradict a written agreement inadmissible. However, an exception to that rule is stated as follows in 13 I.L.E., *Evidence,* § 211 :

> "Where parties enter into a written agreement, their rights must be controlled thereby, and, in the absence of fraud or mistake, evidence of prior or contemporaneous collateral agreements on the same subject matter, varying, modifying, or contradicting the written agreement, is inadmissible.
>
> *   *   *
>
> The above-mentioned general rule is not, however, violated by allowing testimony of a distinct collateral or contemporaneous oral agreement which is not in conflict with the terms of the written instrument. A collateral independent parol agreement between the parties which has been acted upon prior to the time of the writing may be proven, even as against the written obligation. To admit evidence of a preliminary or contemporaneous oral agreement in an action on a contract or

other written instrument, it must be consistent with the instrument and must not tend to vary or contradict its terms, and the term of the oral agreement must be independent of those expressed in the writing, even though it may relate to the same subject matter."

At the point in the trial where the parol evidence rule was invoked to prohibit the exhibits and Traylor's testimony, there was nothing to indicate that the joint venture agreement which Traylor was asked to describe would, in any way, affect the promissory note. Thus, the invocation of the parol evidence rule as a basis for the sustaining of objections to evidence relating to the joint venture agreement was not proper. Of course, if the testimony of Traylor had shown that the joint venture agreement would contradict the written promissory note, then the parol evidence rule would make such testimony inadmissible. But, at this point in the trial, there was no indication that the joint venture agreement was anything other than a separate and distinct contract.

The bank has contended that the deposition which was introduced by stipulation into evidence during the hearing on the offer to prove would show that the joint venture agreement would contradict the terms of the written promissory note and that no joint venture agreement was consummated. That evidence was presented after the trial court had denied the admission of evidence relating to the joint venture agreement. Although the deposition of Traylor is quite damaging to the counterclaim, the deposition is more in the form of rebuttal or impeaching evidence. Obviously, rebuttal must follow evidence which would necessarily be presented by Traylor, and the exhibits.

It must be remembered that this is a counterclaim, which is an independent action rather than a defense, and PDI was denied any opportunity to present evidence on the joint venture agreement which was the basis for the counterclaim. Thus, PDI was denied its day in court.

It is fundamental that a party asserting a claim be given an opportunity to present all evidence relating to the theory of his cause unless such evidence is improper and inadmissible. We find no legal theory which would make the evidence of PDI inadmissible at the point in the trial that it was deemed rejected by the trial court.

It is our opinion that the trial court should have permitted the exhibits and evidence offered by PDI on its counterclaim into evidence; it is our further opinion that the trial court committed reversible error when it sustained objections to Traylor's evidence as the evidence was to make proof of the counterclaim only and we fail to find any connection between it and the written instrument the bank had sued on.

The second issue raised in the motion to correct errors is whether the court erred in its decision that the stock collateral remained as security for the note and that PDI failed to make a proper substitution of collateral as per the addendum to the security agreement.

Traylor contends that he had a contractual right to make the substitution in lieu of the Telesis stock and that such a substitution was accomplished by a letter from his attorney to the bank of which the body is as follows, to-wit:

"On behalf of Mr. Ferris E. Traylor and pursuant to the provisions of the Addendum to your Agreement with him dated July 13, 1970, Mr. Traylor wishes to substitute collateral for the stock certificate representing 635,000 shares of the common stock of Telesis Corporation now held by me as your Agent. As substituted collateral, Mr. Traylor proposes to deliver the contract to sell the beer distributorship specifically referred to in that Addendum and real estate having a value of not less than $515,000.00. The real estate consists of four separate parcels described as follows:

1. Approximately 19 acres of land in Vanderburgh County, Indiana, acquired from the Chicago and Eastern Illinois Railroad Company.
2. Commercial real estate located on Green River Road in Evansville, Vanderburgh County, Indiana.

3. Real estate located at 10-14 North Main Street, Evansville, Indiana.

4. Real estate located at Matlock Road and By-Pass 46, in Bloomington, Indiana.

The appraisals for the real estate are to be delivered to me tomorrow. I shall forward these appraisals to you immediately. I suggest that you prepare and send to me a mortgage of the real estate for execution."

An analogy is drawn by Traylor to the option to purchase situation where he contends that the person exercising the option is only accepting a continuing offer (in this situation, from the bank.) Traylor argues that the letter sent to the bank constituted an acceptance of the bank's offer and that no actual delivery of collateral was necessary to fulfill the requirements of the addendum. Traylor contends that actual delivery only speaks to performance of a contract, not to the contract's formation.

The bank contends that the trial court correctly ruled that the bank had a valid security interest in the Telesis stock. The bank relies on tender and points out that an offer to perform is not sufficient to be a valid tender. Additionally, the bank states that a factual dispute was presented at trial as to the adequacy of the collateral. The bank further argues that even if a valid tender was given, and it was adequate, such tender was not kept good by depositing the same with the court.

We are not persuaded that either tender or the analogy drawn by Traylor can be dispositive of this issue. As above pointed out, the bank and Traylor had entered into a binding contract on the promissory note, the security agreement was in full force and effect, and the stock was being held by an agent of the bank. Traylor, as a result of the addendum, did not have an obligation to substitute collateral, but rather had a right to make such a substitution if he felt that such action was in his best interests. The letter which Traylor contends exercised his

right of substitution was not accompanied by any mortgages, assignments, or any instrument which would give the bank a valid security interest. The letter is simply an offer or a proposal by Traylor to substitute collateral.

The addendum makes no mention of proposals or offers to substitute collateral and clearly states that Traylor and PDI ". . . may substitute collateral for the stock. . . ." The addendum further requires that the substitution be ". . . evidenced by qualified appraisals thereof [i.e., substituted collateral] . . ." No such evidence accompanied the letter. It is our opinion that the letter by itself did not substitute collateral as required by the addendum.

For the above stated reasons it is our opinion that the trial court properly found that the promissory note was secured by the Telesis stock and correctly entered judgment on the note and correctly ordered the foreclosure of said security interest and the court is affirmed thereto.

The court now remands the first paragraph of complaint on the promissory note and for foreclosure of the security interest to the trial court for the purpose of hearing evidence on additional attorneys fees by the court, pursuant to Rule TR. 39(A) (1), and also pursuant to the stipulation of the parties pertaining to attorneys fees for services in appellate work by plaintiff-appellee's attorneys and which additional attorneys fees allowed plaintiff-appellee's attorneys, if any be allowed, for the appellate work be added to the amount of attorneys fees heretofore allowed and ordered paid by the court. Should such additional attorneys fees be allowed, the trial court is ordered and directed to enter a corrected judgment only to the extent of including the additional attorneys fees it may allow.

For the reasons hereinabove set out, we are of the opinion that the trial court committed reversible error in refusing to admit proferred evidence to prove the counterclaim and order the cause remanded for a new trial on the counterclaim.

Appellee bank has petitioned this court, pursuant to Rule AP. 15(F) for an assessment of damages against appellants. This petition is now by the court denied.

Robertson, P.J. and Lybrook, J., concur.

NOTE.—Reported at 303 N.E.2d 672.