Charles N. TINCHER, Appellant–Plaintiff,

v.

GREENCASTLE FEDERAL SAVINGS BANK, formerly known as Greencastle Federal Saving & Loan, John R. Simmons, and United Farm Bureau Mutual Insurance Co., d/b/a Farm Bureau Insurance, Appellees–Defendants.

No. 32A05–9102–CV–45.

Court of Appeals of Indiana, Fifth District.

Oct. 28, 1991.

Andrew P. Sheff, Bennett & Sheff, Indianapolis, for appellant-plaintiff.

Thomas G. Brenton, Brenton & Brenton, Danville, for appellees-defendants.

SHARPNACK, Judge.

In 1971, Charles Tincher mortgaged his home to Greencastle Federal Savings Bank (hereinafter "Bank"). In 1986, his home was destroyed by fire. At that time, Tincher learned that the homeowner's policy initially issued in 1971 had been cancelled some months prior to the fire. He brought this action against Bank to recover damages by reason of the lack of insurance in two counts: the first for breach of contract, the second for negligence. From a summary judgment on both counts for Bank, Tincher appeals. We reverse.

Tincher raises two issues for review which we restate as:

Whether there is an issue of material fact as to whether Bank had a contractual duty to maintain insurance for Tincher under either the written mortgage agreement or a separate oral agreement.

Whether an issue of material fact exists as to whether Bank assumed a duty to maintain insurance and breached that duty giving rise to a cause of action in tort.

The following is a statement of the facts in the light most favorable to Tincher, the nonmovant. On March 5, 1971, Tincher purchased real estate in Stilesville, Indiana. He financed a portion of the purchase price with Bank. At the closing, Tincher and Bank executed a mortgage agreement under which Tincher agreed to "insure and keep insured all improvements now on said real estate." (Record, 349). Pursuant to Bank's instructions, Tincher purchased a homeowner's insurance policy and furnished proof of insurance with Farm Bureau Insurance. At the closing, Tincher and Bank discussed paying insurance premiums and taxes through an escrow account. They agreed that Tincher would pay the first year's premiums and after that Bank would maintain the insurance by making payments through the escrow account. Bank calculated Tincher's monthly mortgage payments to include a portion for payment of taxes and insurance.

After the first premium payment, Bank maintained the insurance on the property from the escrowed funds. Tincher never received a bill for insurance premiums from Bank or Farm Bureau, although he sometimes received "notice of coverage" papers from somebody. The Bank last paid a premium on January 25, 1986.

On May 30, 1986, Bank received a check from Farm Bureau for $297.10. On the face of the check, made payable to Bank, was the notation "Refund A/C Tincher, Charles...." (Record, 276). Bank did not receive a transmittal letter with the check. Bank deposited the money in Tincher's escrow account without a search of its own records to attempt to determine why it had received the check, nor any inquiry to Farm Bureau or Tincher regarding the check. On March 4, 1987, a fire destroyed the house. Tincher called Bank to report the fire and was told that he had coverage and to call Farm Bureau. Farm Bureau informed Tincher that his policy had been cancelled. Tincher had not received notice of the cancellation.

When we review a trial court's entry of summary judgment, we are bound by the same standard as the trial court: we must consider all of the pleadings, affidavits, depositions, admissions, answers to interrogatories, and, where applicable, testimony in the light most favorable to the nonmoving party in order to determine whether a genuine issue of material fact remains for resolution by the trier of fact. *Ayres v. Indiana Heights Volunteer Fire Dept., Inc.* (1986), Ind., 493 N.E.2d 1229, 1234. A genuine issue of material fact exists where facts concerning an issue that would dispose of the litigation are in dispute or where the undisputed facts are capable of supporting conflicting inferences on such an issue. If we have any doubts concerning the existence of a genuine issue of material fact, we must resolve those doubts in favor of the nonmoving party, and we must reverse the entry of summary judgment. *Woodward Insurance, Inc. v. White* (1982), Ind., 437 N.E.2d 59, 62. However, if no genuine issue of material fact exists, and if the moving party is entitled to judgment as a matter of law, we

must affirm the entry of summary judgment. *Id.* The moving party bears the burden of showing the absence of a factual issue and that he is entitled to judgment as a matter of law. *Norman v. Turkey Run Community School Corp.* (1980), 274 Ind. 310, 312, 411 N.E.2d 614, 615.

Tincher first argues that Bank elected to maintain insurance as per the mortgage agreement, and thus assumed the contractual duty to do so. However, the clear language of the mortgage agreement does not support Tincher's claim. It is a general principle of contract law that, where the terms of a contract are not ambiguous, the construction of the contract is a matter of law. *Piskorowski v. Shell Oil Co.* (1980), Ind.App., 403 N.E.2d 838, 844. A contract is ambiguous where reasonable persons would find its terms susceptible to more than one interpretation. *Id.*

The agreement, in pertinent part, reads:

The Mortgagor will insure and keep insured all improvements now on said real estate or which may hereafter be placed thereon, in such amounts and against such hazards and in such companies as shall be satisfactory to the Mortgagee, said policy to be endorsed for the benefit of the Mortgagee as its interest may-appear.

If the Mortgagor shall fail to pay taxes, liens or assessments when due, or to purchase and deliver insurance, to keep the property in good repair or to perform any covenants herein, the Mortgagee, at its election may pay such taxes, liens, assessments, purchase such insurance ... and perform such covenants. All sums of money so advanced by the Mortgagee, together with interest at the rate of 8% per annum from date, shall be and hereby are made a part of the mortgage debt hereby secured....

(Record, 349). The above terms are not susceptible to the interpretation that the clause that enables the Bank to perform covenants that Tincher fails to perform creates a duty for the Bank to perform such covenants. The provision simply allows Bank, if it chooses to do so, to protect its

security interest in the event of Tincher's breach, and to be reimbursed for its expenditures.

Tincher relies upon several cases from sister jurisdictions to support his contention that Bank assumed the contractual duty to maintain insurance. *Agee v. First National Bank of Maywood* (1979), 68 Ill. App.3d 794, 25 Ill.Dec. 425, 386 N.E.2d 899 is inapplicable to this issue because the basis for recovery in that case was grounded in tort. *Id.*, 25 Ill.Dec. at 427, 386 N.E.2d at 901. In *First Federal Savings and Loan Association of Bowling Green v. Savage* (1968), Ky.App., 435 S.W.2d 67, also cited by Tincher, the court held that mortgagee bank had exercised its option to "effect insurance" under a mortgage agreement placing the primary duty to effect insurance on mortgagor where mortgagee collected extra monthly payments to cover insurance renewal premiums. *Id.* at 69. However, it is unclear whether the basis for recovery in that case was for breach of contract or negligence. There, the mortgagor claimed that the mortgagee had "negligently misrepresented to [mortgagor] that his policy was in full force," and that "[mortgagee] agreed to keep the policy in force and carelessly neglected to do so." 435 S.W.2d at 68.

Tincher also relies heavily upon *Pacheco v. Heussler* (1977), 56 A.D.2d 85, 390 N.Y.S.2d 761. In *Pacheco* the parties had a mortgage agreement under which the mortgagor had the duty to insure and also had the duty to reimburse mortgagee for any payments made by mortgagee upon mortgagor's default. *Id.* at 765. The agreement also provided for the maintenance of an escrow account into which mortgagee paid funds sufficient to cover the insurance premiums and taxes. *Id.* Mortgagee made one payment to cover mortgagor's default and, later, after the policy had been cancelled, mortgagee continued to collect funds to pay the premiums. *Id.* The court upheld the jury's finding that mortgagee breached the mortgage agreement by failing to exercise its option to pay premiums upon mortgagor's default. 56 A.D.2d at 90, 390 N.Y.S.2d at 765–766.

The court also concluded that mortgagor reasonably might have relied upon the collection of escrow payments as a representation by mortgagee that the insurance remained in force. 56 A.D.2d at 90, 390 N.Y.S.2d at 766.

We decline to follow *Savage* and *Pacheco* to the extent that those cases may be read to hold that a mortgagee assumes the duty to insure or maintain insurance when it acts pursuant to similar clauses, and that failure to do so may render mortgagee liable for breach of contract.

■ However, there remains a question as to whether Tincher and Bank had a separate oral agreement upon which Tincher may base his action for breach of contract. The trial court found that the parol evidence rule prevents consideration of the agreement. The parol evidence rule excludes any extrinsic proof of prior or contemporaneous oral agreements offered to vary or contradict a written agreement. *Creech v. LaPorte Production Credit Association* (1981), Ind.App., 419 N.E.2d 1008, 1010. The rule is based upon the principle that where the parties have put their legal obligations in writing, it is conclusively presumed that the entire agreement of the parties has been expressed in that writing. That rule stands upon a rational foundation of experience and policy to provide for certainty and stability of written obligations. *Id.*

However, cases from other jurisdictions hold that the parol evidence rule is inapplicable where, pursuant to a mortgage agreement, the mortgagor has the duty to insure, but the parties make a separate oral agreement that the mortgagee will actually procure or renew the insurance for the mortgagor. *Painter v. Twinsburg Banking Co.* (1949), 84 Ohio App. 418, 87 N.E.2d 502; *Bates v. Northern Bond & Mortgage Co.* (1924), 129 Wash. 343, 225 P. 52. In *Painter,* the court noted that, although it was the duty of the mortgagor to insure the mortgaged property, the mortgagor had no obligation to personally secure the insurance. 84 Ohio App. at 421, 87 N.E.2d at 503. A verbal contract whereby mortgagor employed mortgagee as her agent to

procure the insurance would not be contradictory to or in derogation of the written mortgage agreement. 84 Ohio App. at 421, 87 N.E.2d at 504. *See also Graddon v. Knight* (1956), 138 Cal.App.2d 577, 292 P.2d 632.

The above cases are consistent with Indiana case law interpreting the parol evidence rule. *Kruse, Kruse & Miklosko v. Beedy* (1976), 170 Ind.App. 373, 419, 353 N.E.2d 514, 542; *Traylor v. Lafayette National Bank* (1973) 158 Ind.App. 552, 558–559, 303 N.E.2d 672, 676. In *Traylor* the court quoted the following from 13 I.L.E., Evidence, § 211:

> Where parties enter into a written agreement, their rights must be controlled thereby, and, in the absence of fraud or mistake, evidence of prior or contemporaneous collateral agreements on the same subject matter, varying, modifying, or contradicting the written agreement, is inadmissible.
>
> \*　　\*　　\*　　\*　　\*　　\*
>
> The above-mentioned general rule is not, however, violated by allowing testimony of a distinct collateral or contemporaneous oral agreement which is not in conflict with the terms of the written instrument. To admit evidence of a preliminary or contemporaneous oral agreement in an action on a contract or other written instrument, it must be consistent with the instrument and must not tend to vary or contradict its terms, and the terms of the oral agreement must be independent of those expressed in the writing, even though it may relate to the same subject matter.

158 Ind.App. at 558–559, 303 N.E.2d at 677.

The inference most favorable to Tincher is that the terms of the oral agreement required Bank to act as Tincher's agent in the maintenance of insurance. Such an agreement does not contradict his duty under the mortgage agreement to procure and maintain insurance. It is a separate contract made in order to facilitate the exercise of that duty. There is an issue of material fact regarding whether there was consideration to support the oral agreement. *See Painter*, 84 Ohio App. at 421–

422, 87 N.E.2d at 504. Likewise, there is an issue of material fact regarding whether Bank's failure to act after the cancellation constituted a breach of the oral agreement.

■ Nor does the the Statute of Frauds, I.C. § 32–2–1–1 prohibit enforcement of the oral agreement. That section provides:

> No action shall be brought in any of the following cases:
>
> \*　　\*　　\*　　\*　　\*　　\*
>
> Fifth. Upon any agreement that is not to be performed within one (1) year from the making thereof. . . .
>
> \*　　\*　　\*　　\*　　\*　　\*
>
> Unless the promise, contract or agreement upon which such action shall be brought ... shall be in writing, and signed by the party to be charged therewith. . . .

The agreement in question falls under the category of an agreement that is not to be performed within one year from the making thereof, because, by its express terms, the oral agreement required Tincher to provide insurance for the first year. *See Hinkle v. Fisher* (1875), 104 Ind. 84, 87, 3 N.E. 624, 626. However, Indiana law permits the enforcement of oral promises that are within the Statute of Frauds where such promises would otherwise be enforceable under the doctrine of promissory estoppel. *Tipton County Farm Bureau Co-op v. Hoover* (1985), Ind.App., 475 N.E.2d 38, 41.

■ The doctrine of promissory estoppel consists of four elements and is applicable where there is:

> (1) a promise, (2) which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character, (3) which does, in fact, induce such action or forbearance, and (4) injustice can only be avoided by enforcement of the promise.

*Id.* Tincher claims that Bank promised to maintain the insurance and did so for fifteen years. Clearly, the evidence and inferences most favorable to Tincher support the application of the doctrine of promissory estoppel.

Tincher also takes issue with the grant of summary judgment on count II of his amended complaint. In particular, he disagrees with the trial court's finding that Bank owed him no duty in tort. We find that a material issue of fact exists with regard to whether Bank had a duty to renew and maintain insurance for Tincher.

 Under Indiana law, "a duty may be imposed upon one who, by affirmative conduct or agreement, assumes to act, even gratuitously, for another." *Nalls v. Blank* (1991), Ind.App., 571 N.E.2d 1321, 1323. Whether a party has assumed a duty and the extent of that duty, if any, are questions for the trier of fact. *Id.* When a party has assumed such a duty, he must exercise care and skill in its discharge. *Id.*

 Tincher's deposition testimony suffices to raise an issue of material fact. He alleged that Bank assumed the duty to maintain insurance both through the oral agreement made at the closing and Bank's subsequent conduct during the fifteen years between the execution of the mortgage and the fire that destroyed his house. In addition, Tincher testified that he paid money into an escrow account, which Bank used to pay insurance premiums when due as well as to renew the policy over the course of fifteen years. Tincher also testified that he did not receive monthly premium statements, although he did receive occasional statements indicating coverage.

A case from a sister jurisdiction involving similar facts supports our decision. In *Agee v. First National Bank of Maywood* (1979), 68 Ill.App.3d 794, 25 Ill.Dec. 425, 386 N.E.2d 899, the court held that plaintiffs' complaint stated a cause of action for negligence. In that case, the plaintiffs had contracted to buy a house from the Peppers. The contract provided that plaintiffs had the duty to provide and maintain insurance on the house. However, plaintiffs alleged that they had made monthly payments to the Peppers for principal, interest and fire insurance, and that the Peppers and defendant bank had received the money and provided insurance. The plaintiffs alleged that the custom of dealing among the parties established that the defendants

"should and would renew all insurance policies upon expiration." *Id.*, 25 Ill.Dec. at 427, 386 N.E.2d at 901. Plaintiffs' house burned down after their fire insurance policy had expired. The court held that, although the fact that the defendants had accepted money for the payment of insurance was insufficient, by itself, to establish a duty to maintain and renew the insurance, the complaint stated a cause of action because it alleged that the defendants had renewed the policy in the past and that plaintiffs had relied upon such conduct. 25 Ill.Dec. at 429, 386 N.E.2d at 903.

Bank's reliance upon *Lather v. Berg* (1988) Ind.App., 519 N.E.2d 755 is misplaced. Bank quotes the following language from *Lather:*

> An actor is liable for his negligent performance if he has undertaken to perform a legal duty owned by the other ... on behalf of and in lieu of that other. Liability does not arise in the situation when one undertakes to perform functions coordinate to—or even duplicative of—activities imposed on another by a legal duty, but rather the situation in which one actually undertakes to perform for the other the legal duty itself.

*Id.* at 766. In *Lather*, the court affirmed a summary judgment holding that, as a matter of law, defendants had not assumed the duty to prevent an intoxicated minor from driving his own car. *Id.* The uncontroverted evidence revealed that, although the defendants attempted to take the minor's keys, they were not successful. Furthermore, the minor retained an extra set of keys and resisted defendants' attempts to restrain him from driving. At no time did the defendants take control of the car. 519 N.E.2d at 767. Here, there is evidence that supports the inference that Tincher relinquished to Bank control of the maintenance of insurance.

If Bank did assume the duty to maintain insurance, there is also a material question of fact regarding whether Bank breached its duty by allowing the coverage to lapse without notifying Tincher or taking any other steps to maintain a policy after it had received the refund check. Bank contends

that the refund check did not put it on notice of the cancellation because the check did not specify that the policy had been cancelled. In addition, Bank relies upon deposition testimony that it often received refunds for clients who had changed or otherwise altered their coverage. However, whether Bank reasonably should have taken steps to investigate the purpose. of the refund in order to discharge with care its duty to maintain insurance is a question of fact, and given the evidence and inferences most favorable to Tincher, the trier of fact could determine that the Bank is liable.

For the above mentioned reasons, we reverse the order of the trial court granting summary judgment on both counts of Tincher's amended complaint and remand for further proceedings consistent with this opinion.[1]

REVERSED and REMANDED.

RATLIFF, C.J., and BARTEAU, J., concur.

---

1. Appellee's Petition to Strike Reply Brief is denied.

