IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
February 14, 2001 Session

# FIRST CITIZENS BANK OF CLEVELAND v. CAROL CROSS

**Appeal from the Chancery Court for Bradley County**
**No. 96-266    Jerri S. Bryant, Chancellor**

**FILED MARCH 20, 2001**

**No. E2000-01325-COA-R3-CV**

---

This is the second time that this case has been before us on appeal. The case originated as a suit on two promissory notes executed by the defendant in favor of the plaintiff and secured by deeds of trust on real property owned by the defendant. The defendant filed a pleading incorporating a counterclaim, and a third-party complaint against one of the plaintiff's employees, which pleading alleges that the plaintiff, through its employee, breached its undertaking to arrange for additional insurance coverage on the mortgaged property. On the first appeal, this Court held that the trial court erred in denying the defendant's request for a jury trial. On remand, the plaintiff and the third-party defendant moved for summary judgment on the ground that the parol evidence rule bars consideration of the defendant's claim that the plaintiff, through its employee, agreed to contact the agent for the insurance company and arrange for additional insurance on the mortgaged property. The trial court granted the movants summary judgment and, upon confirmation of a Master's report as to the amounts due under the notes, entered a judgment against the defendant. The defendant appeals. We affirm the trial court's grant of summary judgment to the plaintiff on the promissory notes; however, we vacate the grant of summary judgment as to the defendant's counterclaim and third-party complaint.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court
### Affirmed in Part; Vacated in Part; Case Remanded

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which HOUSTON M. GODDARD, P.J., and HERSCHEL P. FRANKS, J., joined.

Richard A. Fisher, Cleveland, Tennessee, for the appellant, Carol Cross.

Roger E. Jenne, Cleveland, Tennessee, for the appellees, First Citizens Bank of Cleveland and Larry McSpadden.

### OPINION

I.

The plaintiff, First Citizens Bank of Cleveland ("the Bank"), brought this action seeking to recover the balance due on two promissory notes – one dated February 28, 1996, in the amount of $200,976 and one dated March 18, 1996, in the amount of $6,342.50[1] – executed by the defendant, Carol Cross, and secured by deeds of trust on real property owned by Cross.

Cross initially borrowed $140,000 from the Bank in order to construct a lake-front house. During construction, the house was destroyed by fire. Cross had the house insured for the full amount of the loan. Cross began construction of another house under the same loan. On February 28, 1996, Cross borrowed an additional $75,676.55 from the Bank to complete construction. The closing agent for the Bank was its employee, Larry McSpadden. At the closing, Cross executed a promissory note in the amount of $200,976, which represented the remainder of her original obligation plus the new advance. In addition to executing the promissory note, Cross executed a security agreement, a deed of trust, and a document referred to as a "Borrower's Agreement to Provide Insurance" ("borrower's agreement") (collectively "the mortgage documents"). The security agreement provides, in pertinent part, as follows:

> INSURANCE – I agree to buy insurance on the property against the risks and for the amounts you require and to furnish you continuing proof of coverage. I will have the insurance company name you as loss payee on any such policy. You may require added security if you agree that insurance proceeds may be used to repair or replace the property. I will buy insurance from a firm licensed to do business in the state where you are located. The firm will be reasonably acceptable to you. The insurance will last until the property is released from this agreement. If I fail to buy or maintain the insurance (or fail to name you as loss payee) you may purchase it yourself.

The deed of trust provides, in pertinent part, as follows:

> **Insurance.** Borrower will keep the property insured under terms acceptable to Lender at Borrower's expense and for Lender's benefit. All insurance policies shall include a standard mortgage clause in favor of Lender. Lender will be named as loss payee or as the insured on any such insurance policy. Any insurance proceeds may be applied, within Lender's discretion, to either the restoration or repair of the damaged property or to the secured debt. If Lender requires

---

[1]The record does not reflect the nature of the transaction that gave rise to the smaller note; however, it was apparently related to the construction of the defendant's house.

mortgage insurance, Borrower agrees to maintain such insurance for as long as Lender requires.

(Bold print in original.)  The borrower's agreement provides, in pertinent part, as follows:

**Section 1: Agreement to Provide Insurance:** As part of my loan, lease, or contract, I agree:
(1) to insure the property and/or the persons listed in section 2 with the coverages shown in section 3 below;
(2) to have you named on the policy, with the "status" listed below;
(3) to arrange for the insurance company to notify you that the policy is in effect and your status has been noted;
(4) to pay for this insurance, including any fee for this endorsement;
(5) to keep the insurance in effect until the debts listed above, and any other debts which now or later may be secured by the property, are paid.  (I understand that the property may secure debts in addition to any listed above.)
**If I Default:** If I fail to keep one or more of these promises:
(1) I agree that you may (but are not required to) buy insurance to protect your interest and add the cost to what I owe you.
(2) I also understand that I may be in default on the underlying debts, and that you may decide to invoke other remedies available to you for such default as well.

(Bold print in original.)

On March 1, 1996, Cross' unfinished house was completely destroyed by fire.  At the time of the fire, no additional insurance had been procured to cover the increase in the amount of the loan, and the insurance proceeds were insufficient to pay all of the indebtedness owed by Cross to the Bank.

The Bank brought this action, seeking to recover on the promissory notes executed by Cross.  Cross filed a counterclaim against the Bank and a third-party complaint against Larry McSpadden, alleging that McSpadden, acting as an agent for the Bank, had agreed to notify the agent for the insurance company that Cross' indebtedness would be increased and that additional insurance would be required.

This matter was originally heard at a bench trial.  Following the conclusion of the proof, the trial court entered a judgment against Cross and dismissed the counterclaim and third-party complaint.  On appeal, this Court reversed, finding that the trial court erred in refusing to grant Cross' request for a jury trial. *See First Citizens Bank of Cleveland v. Cross,* C/A No. 03A01-9806-CH-00203, 1999 WL 76079 (Tenn. Ct. App. E.S., filed January 28, 1999).  On remand, both the Bank and McSpadden filed motions for summary judgment on the basis that the parol evidence rule

bars consideration of Cross' allegation of an oral agreement to the effect that the Bank would arrange for additional insurance on Cross' behalf. Along with its motion, the Bank submitted a statement of undisputed facts, with citations to the affidavits of McSpadden and the Bank's loan officer, Cynthia Finnell, as well as Cross' testimony at the bench trial. McSpadden also submitted a statement of undisputed facts, relying upon his affidavit and Cross' testimony.

McSpadden states in his affidavit that in his capacity as a loan closing officer with the Bank, he closed the loan transaction with Cross on February 28, 1996, pursuant to which Cross executed the aforementioned mortgage documents, which were attached as exhibits to his affidavit. Cythnia Finnell, assistant vice president of the Bank, states in her affidavit that in her capacity as a loan officer, she approved the loan to Cross. She further states that after insurance proceeds of $121,648.59 were applied as a credit to Cross' obligations, the amount owed in principal and accrued interest as of January 19, 1998, on the notes was $78,135.32. The Bank and McSpadden also cited Cross' testimony at the prior bench trial, in which Cross acknowledged that it was her obligation to keep the property insured for the full amount of the loans.

The trial court granted both motions for summary judgment. The matter was referred to a Master for a determination of the outstanding balance owed by Cross to the Bank. The Master's report was filed and no exceptions or objections were made to it. The trial court confirmed the Master's report and entered a judgment against Cross for $11,349.06, being the amount due after a foreclosure on the Bank's security. This appeal followed.

II.

We review the trial court's grant of summary judgment to the Bank and McSpadden against the standard of Tenn. R. Civ. P. 56.04, which provides, in pertinent part, as follows:

> the judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Since our inquiry involves a question of law, there is no presumption of correctness as to the trial court's judgment. **Robinson v. Omer,** 952 S.W.2d 423, 426 (Tenn. 1997). In making our determination, we must view the evidence in a light most favorable to the nonmoving party, and we must draw all reasonable inferences in favor of that party. **Byrd v. Hall,** 847 S.W.2d 208, 210 (Tenn. 1993). Summary judgment is appropriate only if no genuine issues of material fact exist and if the undisputed material facts entitle the moving party to a judgment as a matter of law. Tenn. R. Civ. P. 56.04; **Byrd,** 847 S.W.2d at 211.

## III.

We will first address the propriety of summary judgment to the Bank on the promissory notes. The Bank supported its motion for summary judgment with the affidavits of McSpadden and Finnell, as well as with Cross' testimony at the previous bench trial in which she acknowledged that she knew it was her obligation to keep the property insured in the amount of the loans. In opposition to the Bank's motion, Cross cites her testimony from the prior trial to the effect that McSpadden had promised to contact Cross' insurance agent and advise him to increase the insurance coverage on the mortgaged property:

> Q All right. Now, when you went in the bank on February 28th, tell the court just exactly everything you can recall taking place.
>
> A When I went to the bank on February the 28th was for a closing of the loan where I had borrowed $75,000. I met with Larry McSpadden in the construction department. I went in, and sat down, and talked with Larry. He asked me to read over some documents. He had several documents. And I started reading over the documents, and I noticed that they had the wrong insurance company. They had Nationwide Insurance, which was the insurance company from my first home.
>
> That's when I told Larry McSpadden that they had the wrong insurance company on my paperwork, and he said, "You still don't have Nationwide Insurance?" And I told him no. And he asked me who my insurance company was, and I told him that it was Insurance Incorporated with John Lucchesi. And he goes, "Oh, I know John Lucchesi. He's a good friend of mine." He said, "Well, let's just call him and I'll get proof of insurance at that time."
>
> So we called twice and the telephone was busy. He asked me if I was on my lunch hour, and I told him yes. He said, "Well, I'll tell you what, if you'll just initial through this – put your initials and write down the insurance company that you have at this time, I will call John, get proof of insurance."
>
> He says, "Oh, by the way, have you talked to him about the increase?" I told him no. That's where I was going as soon as I left the bank. And he said, "Well, I'll call John. I'll take care of the proof of insurance, and I'll also talk to him about the increase of the amount." So I initialed everything, [and] left the bank[.]

We find that the Bank is entitled to summary judgment on the promissory notes. In opposition to the Bank's motion, Cross asserts as a defense that the Bank orally agreed to contact her insurance agent and have the amount of insurance coverage increased to conform to the total amount of the loan. While this fact is certainly in dispute – McSpadden denies having had any such conversation with Cross – it is not material to the Bank's suit on the notes. Cross is obligated to pay the promissory notes unless and until her obligation is discharged in accordance with the Uniform Commercial Code. *See* T.C.A. § 47-3-601 *et seq.* The Bank's alleged failure to procure additional insurance for Cross does not constitute a discharge under the Code. *See id.*; *see also **Lancaster Estate v. Williamson County Bank,*** 664 S.W.2d 294, 295-96 (Tenn. Ct. App. 1983) (finding allegation that the lender failed to procure credit life insurance as promised does not discharge or serve as a defense to debtor's obligation on note). The Bank's alleged conduct does not provide Cross with a defense to the Bank's claim. Thus, Cross has not demonstrated that there is a genuine issue of material fact for trial as to the issue of the Bank's right to recover on the promissory notes. Accordingly, summary judgment was properly granted to the Bank on the notes.

While the Bank's alleged oral agreement does not preclude summary judgment on the Bank's claim, it may be the basis for a counterclaim or separate action sounding in contract or tort. *See **Lancaster Estate,*** 664 S.W.2d at 296. Thus, even though the Bank is entitled to summary judgment on the notes, the defendant's counterclaim and third-party complaint, which raise issues of promissory estoppel and other theories of recovery, may still present viable theories of recovery. Thus, the question becomes whether the Bank and its agent, McSpadden, are entitled to summary judgment on these claims as well.

The appellees argue, as they did in the trial court, that they are entitled to summary judgment on Cross' counterclaim and third-party complaint because the parol evidence rule bars consideration of Cross' allegation of an oral agreement that the Bank would arrange for additional insurance on the subject property. They argue that the alleged oral agreement stands in contradiction to the terms of the mortgage documents requiring Cross to purchase and maintain insurance on the property.

The parol evidence rule provides that testimony of prior or contemporaneous oral agreements "is inadmissible to contradict, vary, or alter a written contract where the written instrument is valid, complete, and unambiguous, absent fraud or mistake or any claim or allegation thereof." ***Airline Constr., Inc. v. Barr,*** 807 S.W.2d 247, 259 (Tenn. Ct. App. 1990). Our courts have held, however, that parol evidence of an independent collateral agreement is admissible so long as the collateral agreement does not vary or contradict the writing. ***Id.*** The application of the parol evidence rule and its exceptions depends on the particular facts of each case. ***Early v. Street,*** 192 Tenn. 463, 241 S.W.2d 531, 535 (1951).

While we are not aware of any Tennessee cases addressing a factual scenario similar to the one now before us, other jurisdictions have held that the parol evidence rule is not applicable where the mortgagor has a duty to insure the property pursuant to a written agreement but the parties make a separate agreement that the mortgagee will in fact procure or renew the insurance for the mortgagor. In ***Tincher v. Greencastle Fed. Savings Bank***, the mortgagor alleged, *inter alia*, that

the mortgagee had breached an oral contract to maintain insurance on the mortgaged property. 580 N.E.2d 268, 269 (Ind. Ct. App. 1991). The trial court found that the parol evidence rule barred consideration of the oral agreement and granted the mortgagee summary judgment. *Id.* at 271. The Indiana Court of Appeals reversed, finding as follows:

> The inference most favorable to [the mortgagor] is that the terms of the oral agreement required Bank to act as [the mortgagor's] agent in the maintenance of insurance. Such an agreement does not contradict his duty under the mortgage agreement to procure and maintain insurance. It is a separate contract made in order to facilitate the exercise of that duty. There is an issue of material fact regarding whether there was consideration to support the oral agreement.

*Id.* at 272. In *Graddon v. Knight*, the mortgagors sued the mortgagee under the theories of estoppel and negligence, alleging that the mortgagee had orally agreed to procure the necessary insurance for them. 292 P.2d 632, 634-35 (Cal. Dist. Ct. App. 1956). The California District Court of Appeals rejected the bank's argument that the parol evidence rule bars the admission of oral testimony to support the mortgagors' theories:

> [T]he admissibility of parol evidence here was not to vary the terms of the deed of trust, but to show a contemporaneous oral agreement to the effect that while [the mortgagors] obligated themselves under the written agreement to procure and maintain fire insurance, the parties agreed that the physical act of obtaining the insurance which [the mortgagors] were obligated to furnish was to be done by the bank. In other words the bank agreed to act as [the mortgagors'] agent to obtain the insurance. There is nothing in such agreement that in any way varies the terms of, or is contradictory to, the written instrument.

*Id.* at 635. In *Painter v. Twinsburg Banking Co.*, the mortgagor sued the mortgagee, alleging a breach of an oral contract to have the mortgaged buildings insured against fire loss. 87 N.E.2d 502, 502 (Ohio Ct. App. 1949). The Ohio Court of Appeals reversed a directed verdict for the mortgagee, finding that the parol evidence rule did not preclude the admission of evidence of the parties' oral agreement:

> Under the written provisions of the mortgage, it was the duty of the mortgagor to insure the mortgaged property, not only for her own benefit, but likewise for the benefit of the mortgagee, who, in the event of a fire, would be entitled to a share of the payment to apply on the principal of the note and mortgage. There was, however, no obligation of the mortgagor to personally secure the insurance. She could contract with another to care for this business detail. And, if

the contract was based upon a consideration, she could hold the agent responsible for damages resulting from his negligence or breach of contract. Such verbal agreement, in which the mortgagor employs the mortgagee as her agent, is not contradictory to or in derogation of the written agreement in the mortgage.

*Id.* at 503-04.

We find these cases to be persuasive. The mortgage documents in the instant case required Cross to purchase and maintain insurance on the property. There is nothing in the oral agreement, pursuant to which McSpadden allegedly agreed to contact the insurance agent and have the amount of insurance increased, that contradicts the terms of these written agreements. Neither the security agreement, the deed of trust, nor the borrower's agreement requires Cross to *personally* procure and maintain the insurance; there is nothing in these documents prohibiting Cross from employing or otherwise permitting another person to tend to this detail for her. We find and hold that the parol evidence rule does not bar consideration of the alleged oral agreement. Accordingly, the trial court's grant of summary judgment to the Bank and McSpadden as to the counterclaim and third-party complaint was inappropriate.

IV.

The appellees argue that summary judgment was properly granted to them because, so the argument goes, Cross failed to comply with various provisions of Tenn. R. Civ. P. 56. First, they contend that Cross did not comply with Tenn. R. Civ. P. 56.03, which requires a non-moving party to respond to each fact set forth by the moving party by either (1) agreeing that the fact is undisputed; (2) agreeing that the fact is undisputed for the purposes of the motion only; or (3) demonstrating, with specific citations to the record, that the fact is disputed. Second, they argue that Cross did not comply with Tenn. R. Civ. P. 56.04, which provides that the non-moving party may serve and file opposing affidavits no later than five days before the summary judgment hearing.

We find that Cross' response is substantially in compliance with the requirements of Rule 56.03. Cross' response adequately sets forth the facts that are undisputed. Furthermore, it adequately sets forth, with appropriate citations, those facts that she alleges are in dispute. As to the appellees' second argument, we find that the "five-day rule" for affidavits set forth in Rule 56.04 is not applicable for the simple reason that Cross did not rely upon affidavits in opposing the motions for summary judgment; on the contrary, she pointed to testimony at the first trial. The appellees' arguments are without merit.

V.

Cross argues that the trial court erred in confirming the Master's report and entering a judgment against her in the amount of $11,349.06. As previously indicated, the undisputed material facts before the trial court conclusively demonstrate that the Bank is entitled to summary judgment

on its notes.  By the same token, those same facts show that the Bank is entitled to recover the amount found by the Master and confirmed by the trial court.  Accordingly, this issue is found adverse to Cross.

VI.

The trial court's grant of summary judgment to the Bank on its original claim is affirmed. The grant of summary judgment to the Bank and McSpadden on Cross' counterclaim and third-party complaint is hereby vacated.  This case is remanded for further proceedings, consistent with this opinion.  Exercising our discretion, costs on appeal are taxed to the parties equally.

 

_____
CHARLES D. SUSANO, JR., JUDGE